HARDISON ET AL. *v.* STATE

(Three Appeals In One Record)

[No. 314, September Term, 1960.]

54

*Decided June 30, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT, HORNEY and MARBURY, JJ.

*Robert J. Cooke* for the appellants.

*J. Thomas Nissel, Special Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Joseph D. Buscher, Special Assistant Attorney General,* and *Donald C. Sponseller, State's Attorney for Carroll County,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellants, John Charles Hardison, Charles Fountain Grant and Carson Hardison, together with a fourth defendant, Robert William Blymire, were indicted by the grand jury for Carroll County in an indictment which charged grand larceny in the first count, and breaking and entry in the second count. On August 18, 1960, the appellants moved for a severance, which was granted. Upon arraignment Blymire pleaded guilty. The appellants pleaded not guilty and elected to be tried by a jury, which was duly impaneled. On the same day the jury returned their general verdict of guilty as to each of the appellants. On August 19, Blymire was sentenced to five years in the Maryland Penitentiary, but the sentence was

suspended on condition that he be of good behavior and that he be placed under the parole department of the State of Florida. On August 22, all three appellants were sentenced to five years in the Maryland Penitentiary and have brought this appeal.

On or about February 6, 1960, a store known as Dutterer's of Manchester was broken into and $2,500 was taken from the safe, which had been pried open. Dutterer's of Manchester is a supermarket, located in Greenmount, in Carroll County, Maryland.

Blymire testified for the State against the appellants. He stated that the appellants and he had recently come from Florida, traveling in an automobile that either belonged to Grant or his brother. They went to Blymire's sister's home in Glen Rock, Pennsylvania. They left his sister's home about 9:00 or 10:00 p.m. and started back to North Carolina. When they "got outside of Manchester there, near where Dutterer's Store [was] located," he was told to turn in a side road and stop. He did so, and the other three "went around to the trunk." He drove the car down this side road for about a half a mile and turned around, and, when he returned to the spot where the other three had left the car, they were walking down to meet him. Two of them were carrying boxes and the other had a screw driver and a hammer. One of them told him they had "hit a jackpot," and another "said something about tearing up a tin can [a frail safe]." They wanted some place to hide until daylight, so they went back to his sister's home, arriving there about midnight, where they divided the money.

Gloria Anderson, a sister of Blymire, testified that her brother and one of the appellants had come into her home at about 9:00 p.m. on February 5th. After a short stay, they left and returned sometime after midnight accompanied by the other two appellants. The men brought with them a large metal box that contained money. Two of them had revolvers. The money was spread upon the table and divided into four piles. They would not tell her where they had obtained it. After the money was divided, they left. This testimony of

Gloria Anderson was confirmed by her husband, although he was not certain of the date.

The appellants present the following contentions:

1. That the judgment and sentence imposed upon them was invalid because (a) the offense for which they were convicted was no offense within the meaning of Code (1957), Article 27, § 32,[1] upon which the second count of the indictment was drawn, in that they were charged with breaking and entering a "storeroom" rather than a "storehouse"; and (b) because they could not be convicted under the first count of the indictment which they claim was dependent upon the validity of the second count, and further because the first count charged the defendants with having "feloniously" stolen, taken and carried away $2,500, rather than having stolen the money with the felonious intent to convert it to the appellants' own use.

2. That the trial court erred in failing to instruct the jury as to the definition of an accomplice, and as to the law with respect to the corroboration of the accomplice's testimony.

3. That in any event the corroboration of the accomplice's testimony was insufficient to justify the jury's verdict of guilty.

I

Neither (a) nor (b) under contention I was properly reserved for our determination, but, in view of the fact that

---

1. Code (1957), Article 27, § 32, as of the date of the offense alleged, read:

"Every person, * * *, who shall be convicted of the crime of * * * breaking a *storehouse,* filling station, garage, trailer, cabin, diner, warehouse or other outhouse in the day or night with an intent to commit * * * [a] felony therein, or with the intent to steal, take or carry away the personal goods of another of the value of twenty-five dollars ($25.00) or more therefrom, shall be sentenced to the penitentiary for not more than ten years. (Emphasis supplied.) (This section was amended by the Act of 1960, Ch. 40.)

the case must be remanded for a new trial, we deem it desirable to pass upon them. Maryland Rule 885.

(a)

This claim of error contains two thrusts. The appellants first contend that Section 32[2] makes it unlawful to break into a *storehouse,* and therefore they could not properly be convicted under an indictment that charged them with breaking into a *storeroom.* The claim has little, if any, merit.

The building broken into was a supermarket for retail sales of food, which engaged 25 to 30 employees. It is a matter of general knowledge that supermarkets store and sell large amounts of goods, wares and merchandise. A store has been stated to be a *house* where goods are bought, sold or stored. *Campbell v. State,* 282 S. W. 4, 5 (Ark.) ; *DeWolfe v. Pierce,* 196 Ill. App. 360, 361. And it has been held that the context may enlarge or restrict its ordinary meaning. *Debenham v. Short,* 199 S. W. 1147 (Tex. Civ. App.). *Storehouse* is defined as: "1. A house or building in which things are stored. 2. Any repository or source of abundant supplies, * * *;" and *storeroom* is defined as: "1. A room in which stores are kept. 2. A room or space for storage." *The American College Dictionary,* p. 1192. Section 32 provides that "breaking a dwelling house * * * or breaking a *storehouse,* filling station, garage, trailer, cabin, diner, warehouse or other outhouse * * *" under certain conditions shall be unlawful. The following section, 33, states that "breaking into any shop, *storeroom,* filling station, garage, trailer, cabin, diner, tobacco house or warehouse, although the same be not contiguous to or used with any mansion house * * *" shall constitute a criminal offense under certain other conditions. (All emphasis ours.) A consideration of the definitions given above and the manner in which the legislature has used the words "store-

2. The appellants, in their brief, state: "Although the second count of the indictment obviously was drawn under Section 32 * * *." Later they say: "Your appellants contend that it was impossible to determine whether or not the second count charged under Section 32, Article 27 or Section 33, * * *." The two allegations are difficult to reconcile.

house" and "storeroom" makes it clear, we think, that the legislature has used the words interchangeably and in such a manner as to have the same meaning. We therefore hold that it was not improper for the indictment to charge the appellants with breaking and entering a "storeroom," and that the supermarket broken into came within the definition of such a storeroom.

The second thrust under this subheading is that Section 32 only intended to make it a crime to break and enter the buildings named therein, when they were contiguous to a dwelling house. The appellants argue that the common law and ancestry of the statute indicate that the legislature, in enacting Section 32, only intended to encompass within its scope such buildings as are contiguous to, or within the curtilage of, a dwelling house. Whatever slight force the argument has because of the use of the words "or other out-house," compare *Jones v. Hungerford,* 4 Gill & J. 402, is completely overcome by a consideration of the other places named, such as filling stations, trailers, cabins and diners, which are seldom used in connection with dwelling houses. We deem the contention unsound.

(b)

The appellants also claim that the first count of the indictment was dependent upon the validity of the second count, and, since the second count was defective, they could not properly be convicted under the first count. The contention is devoid of merit. The first count charged them with grand larceny, a felony, and the second count charged the breaking and entering of a storeroom with intent to steal goods of over the value of $25.00, a misdemeanor. The validity of the first count was in nowise dependent upon the validity of the second. In any event, our holding above that the second count was not defective is, in itself, a complete answer to this claim of error.

The appellants' second "bite" under this subheading is likewise without substance. They, in effect, advance the theory that the first count was defective in that it stated the defendants "did feloniously steal, take and carry away" $2,500, rather

than that they "did steal, take and carry away $2,500 with the felonious intention of converting the same to their own use," in other words, the indictment failed to describe the wrongful intention sufficiently. We do not consider it necessary to prolong this opinion unduly by any extended discussion of the argument. Count one properly charged the appellants with the offense of grand larceny and is in the general form that has been widely used throughout this State for many years. This form of accusation is specifically approved in *Hochheimer, Criminal Law* (2 Ed.), Section 374.

## II

The appellants' second contention is that the trial judge committed reversible error when he refused to instruct the jury as to the definition of an accomplice, and as to the law with respect to the corroboration of an accomplice's testimony. The record discloses that the trial counsel, who represented the appellants below, requested the court to instruct the jury as to the definition of an accomplice, and the law with respect to the corroboration of an accomplice's testimony. The trial judge refused, basing his ruling on the fact that defense counsel had already informed the jury as to the law on the subject "by reading to it from Wharton." Apparently the trial judge thought this to be sufficient and commented: "How much more force could the court give it?"

Maryland Rule 739 b, in part, provides that:

> "The court may and at the request of any party shall grant such advisory instructions to the jury as may correctly state the applicable law. But the court may give its instructions either orally or in writing or both. It need not grant any requested instruction if the matter is fairly covered by the instructions actually given. * * *."

Although in the trial of criminal cases the jury are the judges of law as well as of fact (Maryland Constitution, Art. XV, § 5), it is, nevertheless, incumbent upon the court on request in a criminal case to give an advisory instruction on every

point of law essential to the crime charged and supported by evidence. *Bruce v. State,* 218 Md. 87, 145 A. 2d 428; *Noel v. State,* 202 Md. 247, 96 A. 2d 7.

The court's instructions to the jury were most perfunctory in nature. They consume less than a page of the record extract. He instructed the jury that a defendant in a criminal case does not have to testify and no unfavorable inferences should be drawn if he fails to do so; that the burden of proof is on the State to establish guilt beyond a reasonable doubt which means such proof as produces an abiding conviction to a moral certainty of the truth of the charge; that the law presumes every man innocent of crime; that there are two counts in the indictment and the jury must consider both; and what their verdicts should be if they found the appellants guilty on one or more of the counts, or not guilty on either count. This summarizes the entire charge; no mention was made of the constituent elements of either larceny or breaking and entering; no mention was made that the instructions were advisory only and the jury were the final judges of the law, Maryland Rule 739 b; and, as indicated above, no definition of an "accomplice" was given, nor was any mention made of the necessity or sufficiency of corroborating testimony in order to convict.

The refusal of the trial judge to inform the jury who, in law, are, and who are not, accomplices (in the instant case, he should have informed them that Blymire was an accomplice), and the law with reference to the necessity for the corroboration of an accomplice's testimony constitutes reversible error. Testimony of an accomplice should be closely scrutinized and juries should be cautioned, upon request, in the form of an advisory instruction that conviction cannot stand on accomplice's testimony alone, but that corroboration is necessary as to material points. The sufficiency of such corroboration is pointed out in *Wright v. State,* 219 Md. 643, 150 A. 2d 733.

The State contends that the defense counsel informed the jury as to the law when he read from "Wharton" and that anything the trial judge would have said would have been

purely repetitious. This overlooks the requirement of Maryland Rule 739 b, *supra,* and that a statement or instruction by the trial judge carries with it the imprimatur of a judge learned in the law, and therefore usually has more force and effect than if merely presented by counsel. It is proper for jurors to look to a judge who is clothed with the presumption of impartiality to instruct them in an advisory manner as to what is the law of the State in relation to the case before them.

### III

The appellants' third assignment of error is not well founded. The corroboration of Blymire's testimony, as we summarized said corroboration above, was, we think, amply sufficient to take the case to the jury. *Mulcahy v. State,* 221 Md. 413, 158 A. 2d 80; *Wright v. State, supra.*

> *Judgment reversed, and case remanded for a new trial: the costs to be paid by the County Commissioners of Carroll County.*