701 A.2d 374

Mark D. GUNNING, Sr.

v.

STATE of Maryland.

Gary L. HARRIS

v.

STATE of Maryland.

Nos. 132, Sept. Term, 1995, 19, Sept. Term, 1996.

Court of Appeals of Maryland.

Oct. 14, 1997.

Raker and Wilner, JJ., filed concurring and dissenting opinion.

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. General, on brief, Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

CHASANOW, Judge.

Two cases before the Court, *Mark D. Gunning, Sr., v. State,* No. 132, September Term, 1995, and *Gary L. Harris v. State,* No. 19, September Term, 1996, present the identical issue: whether the trial judge erred in refusing to give a requested jury instruction on eyewitness identification. In both cases the defendant was convicted based on the uncorroborated identification of a single eyewitness and in both cases the defense was mistaken identification. Each case involves the same circuit court judge whose refusal to read the instruction was based on his conclusion that "identification is a question of fact" that, unlike a question of law, requires no instruction to the jury. The judge indicated on the record that he, in fact, *"never give[s] that instruction."* (Emphasis added). In light of the commonality of issues and relevant facts, we shall decide both cases in this opinion. For the reasons set forth below, we hold that the trial judge abused his discretion and we reverse the petitioners' convictions.

## I. *Mark D. Gunning, Sr.*

We begin with a brief summary of the facts in each case. Mark D. Gunning, Sr., was charged with robbery with a deadly weapon and related offenses arising from the February 4, 1994, robbery of Marie Hoopes. Gunning was convicted on all charges by a jury in the Circuit Court for Baltimore City.

At trial, Ms. Hoopes testified that she was attacked near her residence in Baltimore as she and her husband were entering their vehicle. The assailant grabbed Ms. Hoopes

around her neck, held a knife to her throat, seized her purse, and fled. Ms. Hoopes never saw her attacker's face.

Mr. William Hoopes testified that he was seated in the driver's seat of his vehicle during the attack on his wife. He indicated that he was approximately two feet from the assailant and stated that he looked "straight in [the assailant's] eyes." Mr. Hoopes further testified that the attacker was wearing "dark pants and [a] dark jacket," had on a "black baseball cap ... with the [bill] turned around backwards," was "between five-eight and six foot" in height, and had a mustache. Mr. Hoopes made both a pre-trial identification by photographic array and an in-court identification of Gunning as the perpetrator of the crime.

Gunning asserted an alibi defense to the charges. He presented testimonial evidence that he was at home watching a video tape with his father, sister, and a friend at the time of the robbery. Mr. Hoopes was thus mistaken, Gunning argued, in identifying him as the perpetrator.

At the close of evidence, Gunning's counsel provided the court with proposed jury instructions, including an identification instruction contained in MICPEL, MARYLAND CRIMINAL PATTERN JURY INSTRUCTIONS. That instruction, MPCJI–Cr 3:30, provided:

"The burden is on the State to prove beyond a reasonable doubt that the offense was committed and that the defendant was the person who committed it. You have heard evidence regarding the identification of the defendant as the person who committed the crime. In this connection, you should consider the witness'[s] opportunity to observe the criminal act and the person committing it, including the length of time the witness had to observe the person committing the crime, the witness'[s] state of mind and any other circumstance surrounding the event. You should also consider the witness' certainty or lack of certainty, the accuracy of any prior description and the witness'[s] credibility or lack of credibility, as well as any other factor surrounding the identification. [You have heard evidence

that prior to this trial, a witness identified the defendant by
_____.] It is for you to determine the reliability of any
identification and to give it the weight you believe it deserves.

The identification of the defendant by a single eyewitness,
as the person who committed the crime, if believed beyond a
reasonable doubt, can be enough evidence to convict the
defendant. However, you must examine the identification
of the defendant with great care."

Counsel also requested the following mistaken identity instruction, which follows substantially the text of DAVID E.
AARONSON, MARYLAND CRIMINAL JURY INSTRUCTIONS, § 5.10:

"Evidence has been introduced that William Hoopes is
mistaken in identifying the defendant as the perpetrator of
the crime.

Whether or not a witness has adequately identified the
defendant as the perpetrator of the crime is a question
solely for you to decide. In other words, the credibility of
the witness is a matter for your consideration and determination. In reaching your determination, you may consider
such factors as any mistake, hesitancy or inconsistency on
the part of the identifying witness.

Specifically, you may consider the opportunity of the
witness to view the person committing the criminal acts at
the time of the crime, including: (1) how long the encounter
lasted; (2) the distance between the various persons; (3) the
lighting conditions at the time; (4) the witness'[s] state of
mind at the time of the offense; and (5) the witness'[s]
degree of attention to the offender during the commission of
the offense.

Also, you may consider the accuracy of the witness'[s]
prior description of the criminal, if any; the certainty or
lack of certainty expressed by the witness; the demeanor
and conduct of the witness making the identification; and
any other direct or circumstantial evidence which may identify the person who committed the offense charged or which
corroborates—that is, strengthens—or negates the identification of the defendant by the witness."

The trial judge failed to give either identification instruction. When the court subsequently inquired as to whether there were any exceptions to the jury instructions, this exchange ensued:

"[DEFENSE COUNSEL]: Your Honor, I would just ask the Court to read the mistaken identity jury instruction I gave the Court from Maryland Criminal Jury Instruction Manual.

THE COURT: Identification is a[n] issue of fact, not of law. *There is no issue of law that requires instruction to the jury on identification.*" (Emphasis added).

The jury found Gunning guilty on all charges and the trial judge imposed a sentence of 10 years imprisonment. Appeal of his conviction on various grounds to the Court of Special Appeals proved unsuccessful. This Court granted certiorari on the single issue of whether the trial judge erred in refusing to give the instruction on eyewitness identification and indicating he never gives that instruction.

## II.  *Gary L. Harris*

Gary L. Harris was charged with battery and theft in connection with a June 11, 1995, purse snatching. Harris was tried by jury in Baltimore City Circuit Court and found guilty on both charges.

A witness for the State, Robin Carponetto, testified that she observed the purse-snatching from the window of a nearby business establishment. Carponetto stated that she described the perpetrator to police as a "black male, medium to dark complected" with "scars like keloids." She further informed the investigating officers that the perpetrator was wearing a black or navy hat, a dark blue T-shirt, and gray or faded pants. Both at trial and in a pre-trial photographic array, Carponetto identified Harris as the man whom she saw steal the victim's purse.

Harris attacked the accuracy of Carponetto's identification, asserting that he was a victim of mistaken identity. At the conclusion of the presentation of evidence, Harris's counsel

requested the same MICPEL pattern instruction on identification as was requested by counsel at petitioner Gunning's trial. The trial judge responded:

"Identification is an issue of fact. It involves no issue of law which the jury needs to consider.

Give it to the Clerk so the record will show you requested it.

But I never give that instruction. It is regrettable it found its way into the pattern jury instructions.

\* \* \*

I mean, I disagree that it's an appropriate—*it's just not an appropriate instruction.* I think it's exceedingly unfortunate that it found its way into a pattern jury instruction.

The Court is required to instruct the jury as to the law on any issue that is raised by the evidence. Identification is purely a question of fact." (Emphasis added).

The trial judge then delivered the jury instructions, omitting the instruction on identification requested by defense counsel. When the judge inquired as to whether there were any exceptions to the instructions, counsel for Harris stated: "Your Honor, just the one I wanted the Court to ask. \* \* \* That would be the one regarding the identification, the Maryland Pattern Jury Instruction."

The jury found Harris guilty of battery and theft. The trial judge imposed concurrent sentences of 5 years imprisonment for the battery conviction, and 18 months imprisonment for the theft conviction. Harris appealed his convictions to the Court of Special Appeals. This Court issued a writ of certiorari to the intermediate appellate court, however, prior to its review of the case.

## III.

The petitioners contend that a trial judge is required to deliver a requested identification instruction whenever the issue of the accuracy of an identification is fairly generated by

the evidence.[1] In support of this argument, the petitioners cite Maryland Rule 4–325(c), which provides:

> "The court may, *and at the request of any party shall,* instruct the jury as to the applicable law and the extent to which the instructions are binding. * * * The court need not grant a requested instruction if the matter is fairly covered by instructions actually given." (Emphasis added).

In refusing to give the requested instruction, the petitioners assert, the trial judge acted in contravention to this rule's express requirements and thereby committed reversible error. In the alternative, the petitioners argue that, even if the decision to give the instruction is discretionary, the trial judge failed to exercise his discretion properly in these instances because the denial was based simply on the judge's established policy of "never giv[ing] that instruction."

The State counters that an identification instruction, such as the one requested by defense counsel, improperly invades the province of the jury, and ought never be given. Even if the

---

**1.** The trial judge gave identical credibility instructions in both the Gunning and Harris cases. Those instructions focused on the credibility of the witness as distinguished from whether the witness might be making an honest, but mistaken, identification. The credibility instruction given by the trial judge in both cases was:

> "You are the sole judges of whether a witness should be believed. In making that decision, you can use your own common sense and apply your own everyday experiences. In deciding whether or not to believe a witness, you should consider all of the evidence and the circumstances under which each witness has testified.

> I suggest you consider the following: The witness' behavior on stand, the way of testifying, did the witness appear to be telling the truth, the opportunity of the witness to hear and see things about which testimony was given, the witness'[s] intelligence, the accuracy of the witness'[s] memory, did the witness have any reason for not telling the truth, does the witness have any interest in the outcome of the case, was the witness'[s] testimony consistent and was it supported or contradicted by other evidence. You don't have to believe any witness even though his or her testimony was uncontradicted. You may believe all, part or none of the testimony of any witness.

> Although both of the cases before this Court are convictions as the result of the testimony of a single uncorroborated identification witness, the dissent apparently believes this credibility instruction is an inadequate substitute for an eyewitness identification instruction in one case, but not in the other.

decision to give such an instruction lies within the discretion of the trial judge, however, the State maintains that the trial judge properly exercised his discretion in these cases.

## A.

■ The MICPEL pattern instruction at issue in the cases *sub judice* sets forth the factors that the jury should consider in evaluating the identification testimony, advises the jury that identification of the defendant by a single eyewitness is sufficient to convict, informs the jury that the State bears the burden of proof, and cautions the jury to "examine the identification of the defendant with great care." *See* MPCJI–Cr 3:30. The appropriateness of such an instruction is generally unsettled among the various jurisdictions.

Some courts have suggested that an identification instruction is mandatory if eyewitness testimony is the only evidence of the identity of the criminal actor, *see, e.g., United States v. Holley,* 502 F.2d 273, 275 (4th Cir.1974), or if the reliability of the identification testimony is in doubt, *see, e.g., United States v. Cain,* 616 F.2d 1056, 1058 (8th Cir.1980). The leading case advocating this approach is *United States v. Telfaire,* 469 F.2d 552 (D.C.Cir.1972), in which the court observed:

> "The presumption of innocence that safeguards the common law system must be a premise that is realized in instruction and not merely a promise. In pursuance of that objective, we have pointed out the importance of and need for a special instruction on the key issue of identification, which emphasizes to the jury the need for finding that the circumstances of the identification are convincing beyond a reasonable doubt."

*Telfaire,* 469 F.2d at 555. The *Telfaire* court further opined that in cases where identification is a crucial issue, the trial judge should give the identification instruction "as a matter of routine," not merely upon request of defense counsel. 469 F.2d at 555 n. 11. An appendix to the decision contained a model identification instruction; the instruction was similar to, although more detailed than, the MICPEL pattern instruc-

tion.² Interestingly, the failure to give an identification in-

---

**2.** The *Telfaire* model instruction on identification is:

"One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

[In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.] *

* Sentence in brackets ([ ]) to be used only if appropriate. Instructions to be inserted or modified as appropriate to the proof and contentions.

(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

[You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.]

[ (3) You make take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.]

(4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is

struction did not amount to error in *Telfaire* because: (1) the court was convinced that other instructions sufficiently focused the jury's attention on the issue of identity; and (2) there were no "special difficulties" that would necessitate additional instructions for a proper evaluation of the reliability of the identification because the victim had ample opportunity to observe the defendant and, furthermore, spontaneously identified him as the perpetrator. *Telfaire*, 469 F.2d at 556. The court was nevertheless explicit that failure to use the proposed model instruction "would constitute a risk in future cases that should not be ignored unless there is strong reason in the particular case." *Telfaire*, 469 F.2d at 557.

Proponents of the *Telfaire* approach emphasize that eyewitness identifications are perhaps less reliable than the average juror appreciates, and consider a cautionary instruction necessary to minimize the risk of erroneous convictions. *See, e.g., State v. Long*, 721 P.2d 483, 492 (Utah 1986)(stating that "a proper instruction should sensitize the jury to the factors that empirical research have shown to be of importance in determining the accuracy of eyewitness identifications, especially those that laypersons most likely would not appreciate"). The Fourth Circuit Court of Appeals has explained: "[T]o guard against misidentification and the conviction of the innocent it is not enough that the trial judge himself be specifically alerted to the detailed factors that enter into the totality of the circumstances [under which the identification was made], but that the jury should also be so charged." *Holley*, 502 F.2d at 275. Several state courts agree with this assessment. The Supreme Court of Kansas, for example, has held that the jury should be instructed to consider the same elements that the

---

truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty."

U.S. Supreme Court has indicated should factor into a ruling on the admissibility of identification testimony:

"(1) the opportunity of the witness to view the defendant at the time of the crime,

(2) the witness's degree of attention,

(3) the accuracy of the witness's prior description of the criminal,

(4) the level of certainty demonstrated by the witness at the confrontation, and

(5) the length of time between the crime and the confrontation."

*State v. Warren,* 230 Kan. 385, 635 P.2d 1236, 1240 (1981)(citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).. If the jury is not instructed to consider these factors, it "might reasonably conclude that the admission of the evidence by the trial court vouched for its reliability." *Warren,* 635 P.2d at 1244; *see also McDoulett v. State,* 685 P.2d 978, 980 (Okla.Crim.App.1984)(stating that "a cautionary instruction ... which advises the jury regarding the factors to be considered" is necessary in certain circumstances); *Com. v. Rodriguez,* 378 Mass. 296, 391 N.E.2d 889, 893 (1979)(citing *Telfaire* with approval and stating that in certain instances a defendant "might well be entitled" to instructions on factors bearing on the accuracy of the identification).

Other jurisdictions have expressly rejected *Telfaire*-like instructions, however, based on the conclusion that eyewitness identification instructions amount to an impermissible judicial comment on the evidence, *see, e.g., Conley v. State,* 270 Ark. 886, 607 S.W.2d 328 (1980), or places an improper emphasis on eyewitness testimony, *see, e.g., Hopkins v. State,* 582 N.E.2d 345 (Ind.1991). The Oregon Court of Appeals, for example, has said of the *Telfaire* instruction: "It is prolix, it tends to overemphasize the issue, and it contains elements that amount to comments on the evidence." *State v. Classen,* 31 Or.App. 683, 571 P.2d 527, 533 (1977), *rev'd on other grounds,* 285 Or. 221, 590 P.2d 1198 (1979). In similarly rejecting *Telfaire,* the Supreme Court of Nevada stated that "specific eyewitness

identification instructions ... are duplicitous of the general instructions on credibility of witnesses and proof beyond a reasonable doubt." *Nevius v. State*, 101 Nev. 238, 699 P.2d 1053, 1060 (1985). The Indiana Supreme Court rejected *Telfaire* on the basis that " 'Indiana law, unlike federal law ..., is distinctly biased against jury instructions which single out eyewitness identification testimony.' " *Hopkins*, 582 N.E.2d at 353 (quoting *Brown v. State*, 468 N.E.2d 841, 843 (Ind. 1984)); *see also Conley*, 607 S.W.2d at 330 (commenting that the *Telfaire* instruction "contains comments on the evidence .... [,] a practice permitted in federal court but not in Arkansas").

We concur with those courts that have declined to adopt either of the rigid rules on the appropriateness of an identification instruction, and have instead held that the decision as to whether to give such an instruction lies within the sound discretion of the trial court.[3]

We note that the Fourth Circuit has modified its *Holley* language in *United States v. Brooks*, 928 F.2d 1403 (4th Cir.1991). In *Brooks*, the court held that a trial judge is not always required to give an instruction regarding trustworthiness of eyewitness identification and adopted the flexible rule giving the trial judge discretion in determining whether such an instruction is necessary. The Fourth Circuit adopted the rationale of the Second Circuit that:

> " 'We believe this flexible approach remains the better course because it avoids imposing rigid requirements on trial courts under the threat that failure to give the requested charge will later be grounds for automatic reversal. In addition, such compulsion would mandate that the special identification charge be given in every case where identifica-

---

**3.** For a more complete survey of the various approaches, see Vitauts M. Gulbis, Annotation, *Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to reliability of, or factors to be considered in evaluating, eyewitness identification testimony—state cases*, 23 A.L.R.4th 1089 (1983); *see also State v. Dyle*, 899 S.W.2d 607 (Tenn.1995)(summarizing three approaches to identification instruction).

tion is implicated—as it so often is—even though the *Neil v. Biggers* factors (discussed below) persuasively indicate the strong reliability of defendant's identification as a participant in the crime charged. *See Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972). Finally, because the trial judge is in the best position to evaluate whether this charge is needed in the case before it, adopting a rigid requirement cuts back on the trial court's discretion in the conduct of a trial without any assurance that the fair administration of justice is thereby enhanced. Leaving the jury charge to the trial court's discretion means that an appellate court is called upon to decide only whether the failure to give a special eyewitness identification charge under the circumstances of a given case constitutes such an abuse of the trial court's discretion as to be reversible error.' "

928 F.2d at 1408 (quoting *United States v. Luis*, 835 F.2d 37, 41 (2d Cir.1987)). *See also Jones v. State*, 450 So.2d 165 (Ala.Crim.App.1983), *aff'd sub nom., Ex parte Jones*, 450 So.2d 171 (Ala.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 232, 83 L.Ed.2d 160 (1984). Illustrative of this approach is *Ohio v. Guster*, 66 Ohio St.2d 266, 421 N.E.2d 157 (1981), in which the defendant was identified by a single eyewitness on three occasions: in a pre-trial photographic array, in a pre-trial lineup, and at trial. 421 N.E.2d at 158. Defense counsel attacked the accuracy of the identifications and, upon conclusion of the presentation of evidence, requested an identification instruction reminiscent of the *Telfaire* model. *Id.* The court rejected counsel's assertion that because eyewitness testimony is "inherently untrustworthy," a cautionary identification instruction was required. *Guster*, 421 N.E.2d at 159. Instead, the court concluded that:

"The determination of whether a cautionary instruction of the type in question should be given will . . . depend in large measure on whether a resolution by the jury of the disputed issues in the case requires or will be clearly assisted by the instruction. It is obvious that such determination cannot be directed by a general rule, but must be decided upon the

particular facts of the case by the exercise of sound discretion."

*Guster*, 421 N.E.2d at 161. The court noted that the identification made from the photographic array and lineup was immediate and unequivocal. *Id.* Moreover, it was made by a trained and experienced police officer who had adequate opportunity, under optimum conditions, to observe the defendant. *Id.* Under these circumstances, there was no error in the trial judge's conclusion that the requested instruction was unnecessary. *Id.*

### B.

■ In Maryland, analysis of the denial of a request for an identification instruction begins with the recognition that a trial judge has a duty, upon request in a criminal case, to instruct the jury on the applicable law. *See Hof v. State*, 337 Md. 581, 655 A.2d 370 (1995); *Blackwell v. State*, 278 Md. 466, 365 A.2d 545 (1976), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2183, 53 L.Ed.2d 229 (1977); *Hardison v. State*, 226 Md. 53, 172 A.2d 407 (1961), *aff'd*, 229 Md. 291, 182 A.2d 487 (1962); *see also* Md. Rule 4–325(c). We find little merit in the State's contention that the identification instruction at issue does not fall within the purview of this general rule because it goes beyond an explanation of the substantive law, and includes particular factors that the jury should consider in evaluating the identification testimony. In *Smith v. State*, 302 Md. 175, 178, 486 A.2d 196, 198 (1985), we referenced Md. Rule 4–325(c) in assessing whether a defendant is entitled to an alibi instruction; that instruction advised the jury to "consider whether the alibi testimony covered the entire period of time during which the crime may have been committed." 302 Md. at 178, 486 A.2d at 197. The inclusion of this evidentiary instruction did not remove the alibi instruction from the category of "applicable law," and the same is true for the identification instruction.

■ We have made it abundantly clear, however, that Md. Rule 4–325(c) is not "absolute." Notwithstanding the rule's

requirement that the trial judge instruct the jury on the applicable law, this Court has held that "[i]n evaluating the propriety of a trial court's refusal to give a requested instruction, we must determine whether the requested instruction was a correct statement of the law; whether it was applicable under the facts of the case; and whether it was fairly covered in the instructions actually given." *Grandison v. State,* 341 Md. 175, 211, 670 A.2d 398, 415 (1995), *cert. denied,* ⸺ U.S. ⸺, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996). If a party requests an instruction on identification, therefore, the trial judge should first evaluate whether the evidence adduced at trial suggests the need for the requested instruction. *See Henry v. State,* 324 Md. 204, 237, 596 A.2d 1024, 1041 (1991)(where no evidence of qualifying convictions was adduced at trial, no error in refusing requested instruction on impeachment through prior convictions), *cert. denied,* 503 U.S. 972, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992). In making this determination the court might consider such factors as any equivocation associated with the identification, the extent to which mistaken identification is reasonably at issue and the existence of, or lack of corroboration of the eyewitness identification. We do not find instructions on such issues to be always mandatory, but neither do we consider them never necessary nor *per se* improper as suggested by the trial judge. We instead recognize that an identification instruction may be appropriate and necessary in certain instances, but the matter is addressed to the sound discretion of the trial judge.

Maryland law also is clear that a requested instruction need not be given where other instructions "fairly cover" the subject matter of the requested instruction. The decision of this Court in *England and Edwards v. State,* 274 Md. 264, 334 A.2d 98 (1975), exemplifies this principle. The appellant in *England* asserted that the trial judge abused his discretion in refusing to give a requested instruction on eyewitness identification. The instruction at issue in *England* did not include as detailed an explanation of the factors to be considered in evaluating the testimony. This Court concluded that "the point sought to be made by the proffered instruction was

fairly covered by the thorough instructions given on the burden of proof and the weighing of evidence." *England,* 274 Md. at 276, 334 A.2d at 105. Accordingly, there was no error in denying the requested instruction, despite the general obligation to instruct the jury on the essential points of law.

The Court of Special Appeals reached a similar conclusion in *Jackson v. State,* 69 Md.App. 645, 519 A.2d 751, *cert. denied,* 309 Md. 325, 523 A.2d 1013 (1987). The appellant in *Jackson* requested an identification instruction that set forth the factors that the jury should consider in evaluating the identification, such as the "[a]dequacy of opportunity to observe the criminal actor," the "[c]apacity of the witness to observe," and the "[a]ttentiveness of the witness." 69 Md.App. at 659, 519 A.2d at 757–58. Although the court refused to give the requested instruction, the jury was instructed "to consider the testimony of all the witnesses concerning identification and give the testimony such weight as the jury thought should be given it." *Jackson,* 69 Md.App. at 660, 519 A.2d at 758. Furthermore, the judge informed the jury that the "testimony of a single witness was sufficient to convict, provided that testimony was convincing beyond a reasonable doubt, but if not convinced beyond a reasonable doubt the jury must acquit the defendant." *Id.* The Court of Special Appeals held that these general instructions "fairly covered" the identification issue. *Jackson,* 69 Md.App. at 662, 519 A.2d at 759. In reaching this decision, the court noted that the identification instruction was not "particularly appropriate to the facts of [the] case" in that:

"This was not a case of a brief encounter under conditions of poor illumination. There was no suggestion in the evidence of any of the factors adversely affecting accuracy of identification that were stressed in the requested instruction. * * * [T]he victim testified that the [appellant] was the same man in whose company she had been for several hours preceding the crime, and ... other witnesses positively identified appellant as the same man who had been with [the victim] for a protracted period of time...."

*Jackson,* 69 Md.App. at 661, 519 A.2d at 758–59. Under these circumstances, there was no error in the judge's refusal to give the requested instruction. *Jackson,* 69 Md.App. at 661–62, 519 A.2d at 759.

■ It should also be noted that a trial judge is under no obligation to use the precise language suggested by counsel in submitting an instruction. The fact that counsel's formulation accurately states the law does not preclude the court from fashioning its own instruction, provided that the judicially-crafted instruction is accurate and "fairly covers" the requested instruction. *King v. State,* 36 Md.App. 124, 373 A.2d 292, *cert. denied,* 281 Md. 740 (1977); *Nelson v. State,* 5 Md.App. 109, 245 A.2d 606 (1968), *cert. denied,* 252. Md. 732 (1969).

In ruling on a request for an identification instruction, therefore, the trial judge must necessarily exercise discretion in assessing whether the instruction ought to be given and whether the issue of identification is fairly covered by other instructions. In many cases, detailed instructions on such issues as witness credibility and/or the burden of proof may adequately encompass the subject matter of a requested identification instruction. In other cases, however, because of the centrality of the identification issue and the nature of the eyewitness testimony, a separate identification instruction might be helpful to the jury. Although jurors might know generally that a witness's perception, especially in times of stress, is not always reliable and that memory is not infallible, an identification instruction assists the jury in its task by pointing out the specific factors that may affect eyewitness identification. A credibility instruction that focuses primarily on honesty and bias may not adequately cover those factors, and thus, may not be sufficient in some cases to assist the jury in evaluating whether an eyewitness is mistaken. In any event, the trial judge must examine the unique circumstances of each case before rejecting a requested eyewitness identification instruction. In particular, the trial judge should consider whether there is a real issue of mistaken identity generated by the defense, as well as such factors as whether the identification testimony is questionable because of the circumstances

surrounding either the witnesses' observations or the identification procedures, and whether there is corroborating evidence concerning the defendant's participation in the crime.

## C.

■ Turning to the instant cases, the judge's denial of the requested eyewitness identification instructions was not grounded on the exercise of judicial discretion; rather, the record in each case is clear that the denial was based on the application of a uniform policy, a policy which arose from the judge's personal opinion that identification instructions are not "appropriate." We reject the trial judge's assertion that identification instructions are always inappropriate, and we hold that the judge's unyielding adherence to this predetermined position amounts to a misunderstanding of the law and a failure to properly exercise discretion. We suggest that had the trial judge properly exercised his discretion he may have concluded in one or both of these cases that the instruction should be given.

■ It is well settled that a trial judge who encounters a matter that falls within the realm of judicial discretion *must* exercise his or her discretion in ruling on the matter. *Colter v. State*, 297 Md. 423, 426, 466 A.2d 1286, 1288 (1983). That exercise of discretion must be clear from the record. *Nelson v. State*, 315 Md. 62, 70, 553 A.2d 667, 671 (1989). The court's failure to fulfill this function can amount to error, that "ordinarily requires reversal." *Maus v. State*, 311 Md. 85, 108, 532 A.2d 1066, 1077 (1987).

■ This Court has stated:

" 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. Where the decision or order of the trial court is a matter of discretion it will not be disturbed on review except on a clear showing of abuse of discretion,

that is, discretion manifestly unreasonable, or exercised on
untenable grounds, or for untenable reasons.' "

*In re Don Mc,* 344 Md. 194, 201, 686 A.2d 269, 272 (1996)(quot-
ing *State ex rel. Carroll v. Junker,* 79 Wash.2d 12, 482 P.2d
775, 784 (1971)). A proper exercise of discretion involves
consideration of the particular circumstances of each case. As
Chief Judge Bond observed in *Lee v. State,* 161 Md. 430, 441,
157 A. 723, 727 (1931), "the discretion being for the solution of
the problem arising from the circumstances of each case as it
is presented, it has been held that the court could not dispose
of all cases alike by a previous general rule." Hence, a court
errs when it attempts to resolve discretionary matters by the
application of a uniform rule, without regard to the particulars
of the individual case.

In *Colter, supra,* the defendant violated a criminal discovery
rule by failing to provide the State with the name of an alibi
witness until the day before trial. 297 Md. at 425, 466 A.2d at
1287. The trial judge sanctioned the defendant by excluding
the alibi witness from testifying. *Id.* This Court noted that
the rules permit the trial judge, upon a finding of noncompli-
ance with a discovery rule, to exercise discretion in fashioning
an appropriate sanction. *Colter,* 297 Md. at 428, 466 A.2d at
1288 (construing Md. Rule 741, predecessor to current Md.
Rule 4–263). Specifically, the rules provide that the trial
judge may grant a continuance, exclude the evidence, or order
any other appropriate remedy. *Colter,* 297 Md. at 426, 466
A.2d at 1288. The record indicated, however, that the judge
failed to exercise such discretion and instead "applied a hard
and fast rule, of not granting a continuance, whether it was
the State or the defendant which was in violation." *Colter,*
297 Md. at 428, 466 A.2d at 1289. Upon counsel's suggestion
that a continuance may have been proper under the circum-
stances, the judge responded:

  " 'Quite frankly, I know some judges will do that, but that
  is not my way of handling it. If the State violates the
  discovery rule and the defense asks that I suppress the
  product, I will suppress it. It's always been the way I

handled it. I think the rules are supposed to be the same for everybody.' "

*Colter,* 297 Md. at 427, 466 A.2d at 1289. This Court concluded that the trial judge's adherence to a uniform policy of suppression indicated a lack of discretion and that such failure to consider the particular facts of the case, or the appropriateness of alternative sanctions, constituted reversible error. *Colter,* 297 Md. at 430–31, 466 A.2d at 1290; *see also Dennison v. State,* 87 Md.App. 749, 763, 591 A.2d 568, 575 (quoting *Hart v. Miller,* 65 Md.App. 620, 627, 501 A.2d 872, *cert. denied,* 305 Md. 621, 505 A.2d 1342 (1986)) (" 'When ... the trial court recognizes its right to exercise discretion but then declines to exercise it in favor of adhering to some consistent or uniform policy, it errs.' "), *cert. denied,* 324 Md. 324, 597 A.2d 421 (1991).

The records in the instant cases indicate a similar failure to exercise judicial discretion. There was no individualized determination that an identification instruction was unnecessary in light of the particular facts and evidence of each case, or that other instructions "fairly covered" the subject of the requested instruction. Rather, the judge's explanation for the denial of counsels' request for the identification instruction was simply that identification is an issue of fact, which requires no instruction. At the trial of petitioner Harris, the judge expanded further on this explanation by stating:

"*But I never give that instruction.* It is regrettable it found its way into the pattern jury instructions.

\*      \*      \*

I mean, I disagree that it's an appropriate—it's just not an appropriate instruction. I think it's exceedingly unfortunate that it found its way into a pattern jury instruction." (Emphasis added).

The judge's admission that he "never give[s] that instruction" belies the State's assertion that the judge exercised proper discretion in the present cases. For this reason, we must reverse the petitioners' convictions. It is quite clear that the requested identification instructions should have at least been

given careful consideration in the instant cases, and arbitrarily rejecting them as always inappropriate was an abuse of discretion.

## IV.

In summary, the error in the instant cases lies perhaps in the trial judge's abusing his discretion by failing to give an identification instruction but even more clearly in failure to even exercise his judicial discretion. If a party requests an identification instruction in a criminal case, the trial judge must evaluate whether the instruction is applicable to the facts of the case at hand, keeping in mind that the purpose of a jury instruction is "to aid the jury in clearly understanding the case, to provide guidance for the jury's deliberations, and to help the jury arrive at a correct verdict." *Chambers v. State*, 337 Md. 44, 48, 650 A.2d 727, 729 (1994). When uncorroborated eyewitness testimony is a critical element of the State's case and doubts have been raised about the reliability of that testimony, a request for an eyewitness identification instruction should be given careful consideration. Conversely, a request for an eyewitness identification instruction may be rejected when there is corroboration of the defendant's participation in the crime, when the circumstances surrounding the eyewitness identification do not give rise to any reasonable doubts as to its accuracy, or when other instructions contain criteria or guidance that is similar to the requested instruction.[4] Such determinations lie within the

---

4. Gunning and Harris were convicted solely on the uncorroborated identification of a single eyewitness who had no prior contact with the defendants. The instructions on credibility of witnesses given in each case were virtually identical. The dissent recognizes that the trial judge erred in both cases by refusing to even consider any eyewitness identification instruction, but the dissent would reverse only the Gunning conviction and finds that in the Harris case the error was harmless. The dissent seems to suggest that, if the single eyewitness professes absolute certainty in the identification and/or if the defendant elects not to testify or present a defense, refusal of an eyewitness identification instruction does not harm the defendant. We disagree and caution trial judges about giving consideration to the factors used by the dissent, *i.e.*, their own personal assessment of the single eyewitness's reliability, the fact that one defendant had alibi witnesses, and the other chose to

sound discretion of the trial court. In the instant cases, however, the judge failed to make an individualized determination and instead applied an unyielding rule that an identification instruction is never appropriate. This amounts to an abuse of discretion and requires reversal in both cases before the Court.

*IN GUNNING V. STATE, JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE CONVICTIONS AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*

*IN HARRIS V. STATE, CONVICTIONS VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*

Concurring and dissenting opinion by RAKER and WILNER, JJ.

RAKER and WILNER, Judges, concurring and dissenting.

We concur in the judgment of the Court reversing the conviction of Gunning but dissent from the judgment reversing the conviction of Harris.

We agree that, in concluding that the eyewitness identification instruction requested by the defendants was legally inappropriate and ought never to be given, the trial court committed an error of law. As the majority opinion makes clear, such an instruction is not generally inappropriate. When criminal agency is in dispute and the State seeks to establish that agency, in whole or in part, with eyewitness identification evidence that is challenged by the defendant, a specific in-

---

exercise his Fifth Amendment privilege not to testify. These are not appropriate factors to be used in deciding whether to give an eyewitness identification instruction.

struction calling the jury's attention to the factors it ought to consider in determining whether the identification is reliable may not only be appropriate but, depending on the circumstances, may be required.

Not just psychologists but courts, including the United States Supreme Court, have recognized that eyewitness identifications are often inaccurate and unreliable and need to be viewed with some caution. *See United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Branch v. State,* 305 Md. 177, 186–90, 502 A.2d 496, 500–02 (1986) (Eldridge, J., dissenting); Vitauts M. Gulbis, *Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to reliability of, or factors to be considered in evaluating, eyewitness identification testimony—state cases,* 23 A.L.R.4th 1089 (1983).[1] The principal function of an instruction like those requested in these cases is to focus the jury's attention on the factors it ought to consider in determining whether a critical eyewitness identification, which, by itself, is adequate *in law* to support a verdict of guilty, is sufficiently reliable *in fact* to justify such a verdict in the particular case. Because eyewitness identification evidence is a very special and powerful kind of evidence, being almost unique in its ability, alone and uncorroborated, to support a conviction, and because there is a demonstrated aura of unreliability associated with eyewitness identifications, it would be a rare case indeed when the giving of a carefully balanced and neutral instruction listing appropriate factors for the jury to consider could be

---

**1.** Perhaps the most famous articulation of that principle was by Felix Frankfurter, commenting in 1927 on the Sacco–Vanzetti case: "What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials." That statement, quoted by the Court in *Wade* was embellished with the Court's own observation: "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." *United States v. Wade, supra,* 388 U.S. at 228, 87 S.Ct. at 1933, 18 L.Ed.2d at 1158.

regarded as legally inappropriate.[2]   As the majority points out, most appellate courts throughout the country—Federal and State have regarded such instructions as at least permissible.   The trial court in the cases now before us was wrong in concluding otherwise.

The majority opinion essentially stops at that point;  having found that the trial judge was in error in determining that the requested instruction was universally inappropriate, the Court reverses both convictions.   We think that more needs to be examined.   Under Maryland Rule 4–325, which governs jury instructions in criminal cases, a court need not grant a requested instruction if the matter is fairly covered by instructions actually given.   Whether that is the case depends, obviously, on the issues raised and what the other instructions say.   The majority mentions the other instructions given in these cases in a footnote but gives no consideration to them;  nor does it take account of the very different factual circumstances presented in the cases.   Even if the substance of a requested instruction is *not* fairly covered by other instructions actually given, reversal is mandated only if the refusal to

---

**2.**   In most instances, as in these cases, competent identification evidence suffices on its own to establish both the *corpus delicti* and criminal agency.   The witness ordinarily (1) testifies to the conduct or activity he or she observed, and (2) identifies the defendant as being the person who engaged in that conduct or activity.   If the testimony as to the occurrence includes all of the elements of the crime, as it most often does, the coupling of that testimony with the identification is usually enough, by itself, to satisfy the test of legal sufficiency and withstand a motion for judgment of acquittal.   The only other kind of evidence having that breadth is accomplice testimony and the defendant's confession, both of which (unless the confession is made in court) require some corroboration.   An uncorroborated extra-judicial confession is insufficient to establish the *corpus delicti* and thus to warrant a conviction.   *Bradbury v. State,* 233 Md. 421, 424, 197 A.2d 126, 127 (1964); *Woods v. State,* 315 Md. 591, 615, 556 A.2d 236, 248 (1989).   Accomplice evidence also must be corroborated;  standing alone, it is insufficient to sustain a conviction.   *Brown v. State,* 281 Md. 241, 378 A.2d 1104 (1977).   Other kinds and items of evidence may, individually, be adequate to establish some or all of the elements of the crime or criminal agency, but they usually need to be linked;  standing alone, they ordinarily do not suffice to establish *both the corpus delicti* and criminal agency.

give the requested instruction is prejudicial. *Rubin v. State,* 325 Md. 552, 585–86, 602 A.2d 677, 693–94 (1992); *Allen v. State,* 91 Md.App. 705, 744, 605 A.2d 960, 979 (1992), *cert. denied,* 327 Md. 625, 612 A.2d 256; and *cf. Hunt v. State,* 321 Md. 387, 441, 583 A.2d 218, 244–45 (1990).

We believe it appropriate—indeed necessary—to examine what was actually before the jury in these cases, and, when that is done, we believe that the correct result is to affirm the judgment in *Harris* and to reverse the judgment in *Gunning.* The Court notes that both cases involved purse snatchings and that both involved uncorroborated eyewitness identifications, and that is true. But there is more involved.

In *Harris,* the victim, Ms. Dennis, was an elderly woman walking north on Cathedral Street carrying bags of groceries when a man grabbed her purse and ran. She was unable to identify the robber. The eyewitness, Ms. Carponetto, was looking out on to Cathedral Street from her place of business and observed the entire episode. Ms. Dennis was walking slowly, and Ms. Carponetto for a moment considered going outside to help her with the groceries. She then saw Harris walking about three feet behind the victim and watched him because she thought he was about to offer to help the victim with the groceries: "So I was watching and thinking, you know, that it was really nice that he was going to do that." Suddenly, she said, "he started moving a little bit more quickly, fiddling with a cigarette behind his ear and looking at her. And he ran up to her and pushed her and grabbed her purse and then ran on down the street."

Ms. Carponetto selected Harris's picture from a photo array several days later and positively identified him in court as the person who robbed Ms. Dennis. She said that she had a clear and unobstructed view through the window, and she described in some detail what Ms. Dennis was wearing, what her complexion was, and even what her purse looked like. She described what Harris was wearing as well, noticing the cigarette behind his ear and the fact that his hat was "a little big for his head." Ms. Carponetto, who did skin care work in

a beauty salon, was also drawn to what she described as keloid scars on Harris's cheek and to the shape of his nose.

Other than the brief testimony of Ms. Dennis as to what occurred, the only other evidence in the case was the testimony of the police officer who showed Ms. Carponetto the photo array; she confirmed the positive identification made by Ms. Carponetto of Harris's picture. Harris did not testify and presented no witnesses or other evidence on his behalf. All that the jury had before it, therefore, was a positive identification by a neutral eyewitness in a nearly perfect daylight setting, with no hint of suggestiveness and no evidence casting any doubt on Ms. Carponetto's ability to observe what occurred and to report that observation accurately.

Although defense counsel suggested to the jury that Ms. Carponetto may have been mistaken in her identification, there was no *evidence* to support the prospect of a misidentification. In its instructions, the court told the jurors that they were the sole judges of whether a witness should be believed and that in making that determination, they were to use their common sense and everyday experiences. The court suggested that they consider the witness's behavior on the stand and way of testifying, whether the witness appeared to be telling the truth, *the opportunity of the witness to hear or see things about which testimony was given,* the witness's intelligence, *the accuracy of the witness's memory,* whether the witness had any reason for not telling the truth, whether the witness had any interest in the outcome of the case, *and whether the witness's testimony was supported or contradicted by other evidence.*

On these facts and with that instruction, we would conclude, beyond any reasonable doubt, that the court's error in determining that the requested eyewitness identification instruction should never be given was in no way prejudicial to the defendant. Under the circumstances, we would hold that the essence of the instruction was, indeed, fairly covered by the other instructions given and that, to the extent it was not, no prejudice ensued. The only significant witness was Ms. Car-

ponetto; her only significant testimony was her identification of Harris. The instructions given by the court necessarily focused the jury's attention on that identification—on her ability to observe what she claimed she saw and on the accuracy of her memory.

The *Gunning* case is different. At about 2:25 on the afternoon of February 4, 1994, Mr. and Mrs. Hoopes, an elderly couple, were about to go on an errand. Mr. Hoopes had already seated himself in the driver's seat of his car and had buckled his seat belt. Mrs. Hoopes was preparing to enter the front passenger seat when an assailant came up behind her, put his arm around her neck and a knife to her throat, pushed her into the car, and ran off with her purse. She did not see the assailant—was not certain even of his race—and could not identify him. She said that the incident took "very little time" and that the man was next to her about a "couple of seconds." Mr. Hoopes did identify Gunning, from both a photo array and in court. He said that he was facing the assailant and looked straight into his face, although he later said that he was focusing on the knife. He also was quite certain that the incident took two-and-a-half to three minutes, which was inconsistent with his wife's testimony that it took but a couple of seconds. He said that he described the assailant as being between five feet eight inches and six feet tall, although the investigating officer recorded the height description as being between six feet and six feet two inches.

In contrast to *Harris*, Gunning presented an alibi defense. His father testified that, shortly after 1:00 on the afternoon of February 4, he drove Gunning to a friend's house to get a movie and that they then returned home and watched the movie, together. The movie lasted, he said, nearly three hours, and, during that period, Gunning did not leave the house. Gunning's friend, Kenny, from whom they had borrowed the movie, came over and joined them for a while. Gunning's sister, Karen, was also in the home at the time and confirmed that Gunning and her father went to get a movie, returned just before 2:00, and that they then watched the movie. She also said that it was a long movie and that

Gunning was present the entire time. The friend from whom they got the movie, Kenny Kleinsmith, also testified. He said that he had many tapes, that he lent them to his friends, but that he recorded in a book each time he lent a movie. He produced the book, which showed that, on February 4, he lent the movie *Scarface* to Gunning's father. Kleinsmith testified that the Gunnings left his home around 2:00 and that he later walked over to their house and remained there until about 3:30.

This evidence presented a very clear conflict, which necessarily put into issue the accuracy of Mr. Hoopes's identification. That conflict appears to have been of some concern to the jury, notwithstanding its ultimate verdict. The case was closed and the jury began its deliberations on June 6, 1994. The jury was excused for the day at 5:00 that afternoon and resumed its deliberations the next day. The record reveals that, at some point on June 7, the jury presented five questions which, so far as we can tell, were never answered by the court. The questions were: (1) Where was Mrs. Hoopes's purse, on which arm; (2) When did the defendant get his hair cut; (3) When was the picture taken of the defendant; (4) Why wasn't the book (presumably Mr. Kleinsmith's book) admitted as evidence; and (5) When the defendant was in custody, what was his appearance (what did he look like?) Were the mug shots presented taken when the defendant was in custody? Are they available and can we see them?

The record does not reveal whether these questions were asked prior to or after the jury returned its verdicts. The transcript makes no mention of them; they are simply filed in the record with the date of June 7, 1994. In either event, they indicate that the jury did entertain some question about the evidence; this was not at all the kind of open and shut case presented in *Harris*.

In this setting, and unlike the situation in *Harris*, we are unable to conclude that the court's erroneous view as to the propriety of an eyewitness identification instruction was not prejudicial. Had the court understood that such an instruc-

tion was permissible, it may well have given one in this case, and, had it done so, the jury would have had before it specific and objective factors to focus its attention on the reliability of Mr. Hoopes's testimony. Given the fact that several witnesses testified, giving a conflicting account of Gunning's whereabouts, the general credibility instruction would not, as in *Harris*, have given that special focus to the jury. That is why we concur with the Court's reversal of Gunning's conviction.

As the *Telfaire* court pointed out, a distinction needs to be drawn between the desirability of an eyewitness identification instruction when criminal agency is in dispute, as to which that court took a liberal and expansive view, and whether the failure to give such an instruction constitutes reversible error, as to which it took a decidedly less liberal and expansive view. *United States v. Telfaire*, 469 F.2d 552, 556, 152 U.S.App. D.C. 146, 150 (D.C.Cir.1972). We believe that trial courts, upon proper request, ought to give a neutral and balanced instruction calling the jury's attention to the factors it should consider in determining the reliability of an eyewitness identification whenever (1) criminal agency is in dispute, (2) the State's case as to criminal agency rests, to any significant degree, on eyewitness identification evidence, and (3) whether through cross-examination or other evidence, the reliability of the identification is significantly challenged by the defendant. In such a case, there really is no reason not to give the instruction; it takes but a few seconds and properly focuses the jury on what is likely to be the most critical issue in the case. It gives sufficient, but not undue, credence to the documented concern over the reliability of eyewitness identifications and gives the jury a more rational basis for determining whether the particular identification evidence before it is, in fact, reliable.

In espousing that view, we do recognize that there may be cases where such an instruction may truly be unnecessary— where the identification witness is a close friend or relative of the defendant, for example, knows the defendant well, and had an unimpeded opportunity to observe the defendant at the relevant time. In those kinds of situations, it is not likely that

the defendant will seek a specific instruction or would have much of a basis for complaining if one was not given. We agree that the court has some discretion in the matter, but, like the *Telfaire* court, would admonish trial judges to be careful and circumspect when rejecting requests.