77 A.3d 1064

**101 GENEVA LLC**

v.

**Ethel E. WYNN, et al.**

**No. 89, Sept. Term, 2012.**

Court of Appeals of Maryland.

Oct. 18, 2013.

234

**236**

Robert H. Hillman (Samuel I. White P.C., Rockville, MD), on brief, for appellant.

Andrew J. Brenner (Morris Hardwick & Schneider, LLC, Baltimore, MD), on brief, for appellant.

Matthew J. Fader, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Md., Baltimore, MD) as amicus, on brief, for Administrative Judge of the Circuit Court for Montgomery County.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, WATTS, JJ.

HARRELL, J.

We are asked, in this case, to consider the scope of this Court's decision in *Maddox v. Cohn*, 424 Md. 379, 36 A.3d 426 (2012). The record, as it reached this Court after issuance of a writ of certiorari, suggests that the Administrative Judge of the Circuit Court for Montgomery County may have directed a colleague, who heard what amounted to exceptions to a notice issued by the Administrative Judge proposing to dismiss the subject foreclosure action, to vacate the foreclosure sale and order a resale because the advertisement of the foreclosure sale included an impermissible fee under *Maddox*. The hearing judge, feeling bound by her understanding of this direction, followed suit. We conclude that the hearing judge abused her discretion in yielding deference to the Administrative Judge's apparent view.

Ordinarily, finding an abuse of discretion would lead directly to a remand for the hearing judge (or whoever might be assigned to hear this matter anew) to exercise discretion; however, this record is sufficient for us to reach the two underlying arguments regarding the scope of Md. Rule 14–207.1 and *Maddox* raised in this case by Appellants. Thus, we

hold that the screening procedures utilized here by the Circuit Court for Montgomery County, pursuant to Md. Rule 14–207.1, are permissible. Finally, we hold *Maddox* inapposite to this case because here the fee was contemplated by a Maryland rule. We reverse the order vacating the foreclosure sale and remand for further proceedings.

## FACTS AND LEGAL PROCEEDINGS

On 2 May 2011, Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr., as Substitute Trustees under a deed of trust, initiated in the Circuit Court for Montgomery County a foreclosure action against Ethel E. Wynn and Jeffrey L. Wynn ("the Wynns"), the defaulting borrowers under the underlying deed of trust and note.[1] The Substitute Trustees advertised the foreclosure sale of the property in a newspaper of general circulation on three occasions in late September and early October of 2011. The advertisement announced, in pertinent part, the following term of sale:

> **TIME IS OF THE ESSENCE.** If purchaser fails to settle within the aforesaid ten (10) days of the ratification, the purchaser agrees to pay the Sub–Trustees' attorney fees of $750.00, plus all costs incurred, if the Sub–Trustees have filed the appropriate motion with the Court to resell the property.

On 17 October 2011, the property was sold at auction to the Appellant, 101 Geneva LLC, a third party purchaser, for $225,000.[2] On this same day, the advertisement of sale was filed. On 31 October 2011, the Substitute Trustees filed the Report of Sale and related documents.

---

1. In June 2007, the Wynns entered into a refinancing transaction in which the deed of trust for their residence, located at 436 McArthur Drive in Rockville, MD, secured the promissory note for a loan with an original principal balance of $197,500.00.

2. In the Substitute Trustees' statement of debt, filed on 2 May 2011, the principal balance due on the property, plus interest, fees, and advances, totaled $241,734.09.

On 24 January 2012, prior to any ratification by the Circuit Court of the foreclosure sale, *Maddox v. Cohn*, 424 Md. 379, 36 A.3d 426 (2012), was decided. Apparently, the Administrative Judge for the Circuit Court assumed personally, post-*Maddox*, the responsibility to review the papers of all foreclosure actions pending in the Circuit Court for compliance with *Maddox*, pursuant to the screening procedures authorized by Md. Rule 14–207.1(a).[3] After reviewing the papers of the foreclosure action in the present case, the Administrative Judge concluded that the $750 fee included in the advertisement of sale was impermissible under *Maddox* and issued a notice, designated as "Notification to Plaintiff Trustee of Noncompliant Foreclosure Filing and Contemplated Dismissal" (hereinafter "Notice of Non–Compliance") on 29 February 2012. This Notice of Non–Compliance provided, in pertinent part, that the "[s]ale is invalid due to advertised demand for impermissible fees and charges per Maddox V. Cohn, Court of Appeals, January 24, 2012." The Substitute Trustees and 101 Geneva filed written responses (in the nature of exceptions) to the Notice of Non–Compliance.

A different judge of the Circuit Court presided at a hearing on 10 May 2012 to address these exceptions. The hearing judge stated, on the record, that she consulted prior to the hearing with the Administrative Judge and that "he believes it's an impermissible fee pursuant to *Maddox v. Cohn.*" She stated that setting the case on her motions docket was a "mistake" because "[i]t is usually reviewed by, decided by [the Administrative Judge] because for the exact reason he wants consistency in these cases. And he has decided as a policy

---

3. Maryland Rule 14–207.1(a) provides:

 The court may adopt procedures to screen pleadings and papers filed in an action to foreclose a lien. If the court determines that the pleadings or papers filed do not comply with all statutory and Rule requirements, it may give notice to the plaintiff and each borrower, record owner, party, and attorney of record that the action will be dismissed without prejudice or that some other appropriate order will be entered by reason of the noncompliance if the plaintiff does not demonstrate within 30 days that the papers are legally sufficient or that the deficiency has been cured.

matter as he reads that case, this case would fall under the same reasoning and therefore the sale has to be rescinded." She further stated that "since that's his determination I feel bound by that," even though she acknowledged that she thought the Substitute Trustees and 101 Geneva "do have some legitimate arguments that may be persuasive to him that this should not fall under that case. But I'm not going to make that call because he has instructed me otherwise." After the hearing concluded, an order was entered vacating the sale of the property to 101 Geneva and ordering a resale.

101 Geneva appealed to the Court of Special Appeals. On 16 November 2012, prior to any decision by the Court of Special Appeals, this Court granted a writ of certiorari based on the petition of Appellants.[4] *101 Geneva LLC v. Wynn,* 429 Md. 303, 55 A.3d 906 (2012). Because the Wynns did not participate in this case at any level, we asked the Attorney General of Maryland "to participate as an *amicus curiae* in this case and to file a brief on behalf of the Circuit Adminis-trative Judge of Montgomery County as well as participate in oral arguments." On 23 July 2013 (prior to briefing or argument), the Attorney General of Maryland filed, on behalf of the Administrative Judge, a motion to vacate the decision below and remand the case to the Circuit Court for further proceedings.[5] We denied the motion on 14 August 2013. The

---

**4.** Although 101 Geneva was the only petitioner in the petition for certiorari filed with this Court, the Substitute Trustees appeared on the brief filed with this Court and participated in oral arguments before this Court.

**5.** In the Attorney General's motion, he relied upon two bases for the requested vacatur and remand. First, the Attorney General asserted that vacating the decision below and a remand are required because a "manifest misunderstanding" occurred between the hearing judge and the Administrative Judge. Specifically, "the apparent premise of the appeal—that there exists in Montgomery County a policy constraining the exercise of discretion by motions judges ruling in foreclosure proceedings—is factually incorrect." According to the Attorney General, as well as the Administrative Judge in an affidavit appended to the Attorney General's brief, the Administrative Judge disputes the hearing judge's characterization of their discussion as establishing such a policy and, more generally, disputes that he has any such policy.

case proceeded with briefing and argument, with the Attorney General's Office's participation.

For purposes of condensing and simplifying the questions presented,[6] we reframe the questions for our possible consideration as follows:

> According to the Attorney General, the hearing judge "had the authority and responsibility to exercise discretion in adjudicating the claims before her." The Administrative Judge did not divest her of any discretion or authority. Because the hearing judge chose not to exercise her discretion, the Attorney General conceded that she abused her discretion. The Attorney General argued that, because the hearing judge abused her discretion, "a remand is required to allow the circuit court, in the first instance, to rule on the issues raised in the responses of 101 Geneva and the Substitute Trustees to the Notice of Non–Compliance."
>
> Second, the Attorney General urged this Court to decline to address the remaining issues. The Attorney General asserted that deciding these other issues is not desirable nor in the public interest because of the incomplete record which is devoid of any decision by the Circuit Court, as well as the lack of an opposing party to advocate against 101 Geneva's position and develop better the record.

6. The five questions raised in the petition for certiorari provided, in verbatim:

> (1) Does the trial court, in a foreclosure sale involving a third-party purchase, have the authority to sua sponte undertake what are tantamount to "Exceptions to the Sale" when none are taken in a timely fashion by the Borrower nor any interested party, and thereafter, despite uncontested opposition, vacate the sale based on *Maddox v. Cohn* ?
>
> (2) Is the trial court's issuance of a Notice of Non–Compliance pursuant to Rule 14–207.1 proper once a foreclosure sale has occurred and is Rule 14–207.1 applicable to the trial court, acting sua sponte, for post-foreclosure sale reviews performed beyond the timeframe of the Rules (i.e. Md. Rule 14–305(e)) which calls for the ratification of the sale?
>
> (3) Is the right of the trial court to act sua sponte in objecting to the "fairness or properness" of the sale barred by failing to undertake an equitable review within 60 days of the filing of the Report of Sale or the time when Exceptions were due and were not filed, or if they were filed, were denied?
>
> (4) Did the trial court err in setting forth a "policy" relative to the decision in *Maddox v. Cohn*, which it has improperly retroactively applied uniformly to all foreclosure sales in Montgomery County in violation of Md. Rule 1–102?
>
> (5) Does the imposition of this "policy" by the trial court in vacating the sale, in lieu of denying ratification for cause pursuant to Md. Rule 14–305(e), constitute a violation of the due process clauses of the

(1) Whether the Circuit Court, in vacating the foreclosure sale without considering the parties' arguments at the motions hearing, abused its discretion?

(2) Assuming the Circuit Court abused its discretion, whether the record has a sufficient evidentiary basis for this Court to reach the merits of the underlying arguments?

(3) Whether the Circuit Court for Montgomery County's issuance of the Notice of Non–Compliance resulting from its *sua sponte*, post-foreclosure sale review of the pleadings and papers was proper pursuant to Rule 14–207.1(a)?

(4) Whether the Circuit Court correctly concluded that the term of sale imposing an additional fee on the successful bidder only in the event the bidder defaults is prohibited by this Court's decision in *Maddox v. Cohn*, 424 Md. 379, 36 A.3d 426 (2012)?

## DISCUSSION

### I.

▮▮▮ "It is well settled that a trial judge who encounters a matter that falls within the realm of judicial discretion *must* exercise his or her discretion in ruling on the matter." *Gunning v. State*, 347 Md. 332, 351, 701 A.2d 374, 383 (1997) (citing *Colter v. State*, 297 Md. 423, 426, 466 A.2d 1286, 1288 (1983)). "A proper exercise of discretion involves consideration of the particular circumstances of each case." *Id.*, 347 Md. at 351, 701 A.2d at 383–84. The court's failure to exercise this discretion results in a failure to fulfill this function and "is, itself, an abuse of discretion," *G.E. Capital Mortg. Servs., Inc. v. Edwards*, 144 Md.App. 449, 455, 798 A.2d 1187, 1190–91

---

Federal and State Constitutions, by effectively denying the (Substitute) Trustees the right of appeal?

Because neither the Attorney General's nor the Substitute Trustees' and 101 Geneva's briefs framed the questions presented identically to those questions for which we granted certiorari, we feel no loyalty to the original phrasing and organization of the certiorari questions.

(2002) (citing *Merritt v. State,* 367 Md. 17, 27, 785 A.2d 756, 762 (2001)), which " 'ordinarily requires reversal.' " *Gunning,* 347 Md. at 351, 701 A.2d at 383 (quoting *Maus v. State,* 311 Md. 85, 108, 532 A.2d 1066, 1077 (1987)). *See also Gray v. State,* 368 Md. 529, 565, 796 A.2d 697, 718 (2002) (noting that "our cases hold that the actual failure to exercise discretion is an abuse of discretion"); *Johnson v. State,* 325 Md. 511, 520, 601 A.2d 1093, 1097 (1992) ("The failure to exercise discretion when its exercise is called for is an abuse of discretion.").

██ In determining whether the hearing judge was called upon to exercise her discretion in this case, we look to Md. Rule 14–207.1, which governs a circuit court reviewing the pleadings and papers filed in foreclosure actions for compliance with the Maryland rules and statutes. The plain language of Md. Rule 14–207.1 states that, if the court finds the papers and pleadings to be in non-compliance with the rules or statutes, the court *"may "* notify parties that it will dismiss the case or will issue "some other appropriate order," unless the plaintiff shows "the papers are legally sufficient or that the deficiency has been cured." Md. Rule 14–207.1(a) (emphasis added). This language grants a circuit court discretion in these decisions. *See Shepherd v. Burson,* 427 Md. 541, 559–60, 50 A.3d 567, 578 (2012) (holding that the circuit court exercised properly its discretion under Md. Rule 14–207.1 to deny the motion to dismiss the foreclosure action). Moreover, the vacatur of a foreclosure sale, like the bifurcation in *Turnbull,* "is a judicial decision affecting the rights and interests of litigants, and, as such, it is generally within the discretion of trial judges to rule on the matter." *St. Joseph Med. Ctr., Inc. v. Turnbull,* 432 Md. 259, 283, 68 A.3d 823, 837 (2013). Therefore, once the exceptions to the Rule 14–207.1 Notice of Non–Compliance were assigned to the hearing judge, it was within her province to make a discretionary decision on the arguments.[7] *See Turnbull,* 432 Md. at 275, 68 A.3d at 833

---

7. Essentially, the Attorney General conceded this point in its pre-argument motion to remand this appeal without briefing, argument, or a formal opinion. *See supra* note 5.

("[O]nce assigned to preside over a trial, it is generally within the province of a trial judge to make discretionary decisions that affect the rights and interests of the litigants.").

Despite being vested with this discretion, the hearing judge failed to appreciate or exercise her discretion, in favor of an "unyielding adherence to [a] predetermined position," *Gunning*, 347 Md. at 351, 701 A.2d at 383, and an improper deference to her understanding of the Administrative Judge's views.[8] In this case, the record is clear that the hearing judge commenced the hearing with no intention of entertaining seriously the parties' arguments (no matter what they were), but rather indicated that she had decided prior to the hearing to defer to the Administrative Judge's opinion.[9] Specifically, she stated, "since that's his determination [that the fee was impermissible under *Maddox*,] I feel bound by that." One of the excepting parties, who was also an attorney, responded, "So it seems to me that this Court was predisposed into making that decision," to which the judge stated, "That would be accurate." When a circuit court is vested with discretion, such predispositions are inappropriate and constitute an abuse of discretion. *See id.*, 347 Md. at 351, 701 A.2d at 383.

Additionally, the lower court's decision to vacate the sale "was not grounded on the exercise of judicial discretion; rather the record . . . is clear that" the hearing judge deferred to the Administrative Judge's decision that the fee at issue was impermissible under *Maddox*. *Id.* At the hearing, the hearing judge opined that it was a "mistake" for the motions

---

8. It is possible also that the hearing judge misunderstood the gist of her consultation with the Administrative Judge, at least with regard to whether he was directing her to yield to his views or to exercise her discretion to agree with his views, as posited by his affidavit appended to the Attorney General's brief. *See supra* note 5. That is of no consequence here because it is crystal clear that, even if she was operating under a misapprehension of what he said to her in this regard, she failed nonetheless to appreciate that she had discretion and failed to exercise it.

9. The Administrative Judge's views on the scope of *Maddox* were known before his consultation with the hearing judge, and are found in his Notice of Non-Compliance.

**244**

hearing to be set on her docket. She explained, "It is usually reviewed by, decided by [the Administrative Judge] because for the exact reason he wants consistency in these cases." She acknowledged that the Substitute Trustees and 101 Geneva had "some legitimate arguments," but refused "to make that call because he [the Administrative Judge] has instructed me otherwise."

If the off-the-record colloquy between the judges occurred as the hearing judge recalled, our recent decision in *St. Joseph Medical Center, Inc. v. Turnbull*, 432 Md. 259, 68 A.3d 823 (2013), would be on point. An administrative judge may not infringe on a trial judge's exercise of discretion. Specifically, we stated,

> Whether a judge acts in a judicial or administrative capacity, his or her actions must be within the scope of his or her authority. A judge, when acting in a judicial capacity as a trial judge with "his [or her] finger on the pulse of the trial[,]" *State v. Hawkins*, 326 Md. 270, 278, 604 A.2d 489, 493 (1992), will usually have discretion to preside over a trial and make judicial decisions that affect the rights of the parties in that trial. When acting as an Administrative Judge, largely, a judge has the power to make administrative decisions that focus on the administration of the court, but *would not, in general, be empowered to unilaterally divest other judges of the court of their inherent authority to rule on issues affecting the rights and interests of litigants in a specific case.*

*Id.*, 432 Md. at 277, 68 A.3d at 834 (emphasis added). In any event, because the hearing judge failed to exercise her discretion, she abused her discretion. Accordingly, we vacate the order vacating the sale.[10]

---

**10.** 101 Geneva and the Substitute Trustees assert additionally that the Circuit Court's screening procedures pursuant to Rule 14.207.1 violate the parties' due process rights. Because we agree that the hearing judge abused her discretion in her apparent unyielding adherence to a predetermined decision deferring to the Administrative Judge's views and we accordingly vacate its order vacating the sale, we do not need to reach the due process argument.

## II.

 Next, we consider whether we should remand this case for further proceedings or whether we may reach any of the other contentions in this case. The Attorney General argues that, because the hearing judge abused her discretion by not exercising it, we should set aside the order vacating the sale and remand this case to the Circuit Court for reconsideration of Appellants' exceptions to the Administrative Judge's 29 February 2012 Notice of Non–Compliance. According to the Attorney General, this "Court should not reach the merits of the permissibility of the particular fee that is the subject of this dispute because the record provides an insufficient basis on which to rule." The Attorney General reasons that further proceedings are necessary because the Circuit Court did not address these issues on the record as it was and thus did not develop an explanation or support for its decision to vacate the sale. We disagree and find that the record, as it currently stands, contains a sufficient foundation for us to reach the merits of the underlying arguments.

The advertisement, which is included in the record, provides the term of sale with the disputed fee. A copy of the Notice of Non–Compliance, which was issued by the Administrative Judge and which deemed the advertisement improper under *Maddox*, is provided. Further, the record is clear that all the parties and the relevant Circuit Court judges understood the charge to which the Notice of Non–Compliance referred.[11]

---

11. The Appellants state, in a footnote of their brief, that the Notice of Non–Compliance was "devoid of any specifity as to the nature of the non-compliance with any Rule or Statute." The notice, however, provided sufficient notice in stating, "Sale is invalid *due to advertised demand for impermissible fees and charges per Maddox v. Cohn,* Court of Appeals, January 24, 2012." (Emphasis added.) Furthermore, that the Substitute Trustees and 101 Geneva provided comprehensive briefing on the precise matter demonstrates that adequate notice was provided.

To the extent that the Appellants meant that the Notice of Non–Compliance's reference to a violation of *Maddox* was not proper under Rule 14–207.1 because *Maddox* is not *per se* a rule or a statute, we find that argument unpersuasive. The narrow holding of *Maddox* is that a fee unauthorized by a Maryland Rule, statute, or the underlying mort-

Moreover, and most importantly, the Circuit Court's order vacating the sale on the grounds of non-compliance, as set forth in the Notice of Non–Compliance, is provided in the record. Because the order states clearly the grounds on which it vacated the foreclosure sale, we find that we do not need more.

The Attorney General further suggested in his Motion to Vacate and Remand that the lack of a true opposing party (such as the Wynns, the defaulting borrowers, or perhaps an unsuccessful bidder or would-be-bidder) meant that we should remand this case and wait for perhaps another appeal, with a better developed record, to address these issues. The Wynns have not participated in this case at any level and, thus, were we to remand the case, there is scant prospect that a party would have any incentive or interest in putting forth evidence to develop better the record. We find that this probable lack of an opposing party dissuades us from remanding the case. We fail to see how a remand to the Circuit Court would lead to a more meaningfully developed record.

### III.

Moving on to the merits of the flagship contentions in this case, we address first 101 Geneva's and the Substitute Trustees' challenges to the Circuit Court's screening procedures under Md. Rule 14–207.1(a). Second, we address whether the additional fee imposed in the event of a default by a successful auction bidder is impermissible under *Maddox*.

### A.

Appellants challenge on several grounds the Circuit Court's procedures for reviewing papers and pleadings in foreclosure sale proceedings under Md. Rule 14–207.1. We

gage, deed of trust or note is impermissible. *Maddox*, 424 Md. at 399–400, 36 A.3d at 438. Accordingly, if we rephrase the Notice of Non–Compliance, it states, in other words, that the fee is unauthorized by a Maryland Rule or statute. As such, the notice fits within the purview of Rule 14–207.1.

shall address each of these challenges, as well as the Attorney General's responding arguments, in turn. At the end of the day, we find no merit in any of Appellants' contentions in this regard. Thus, we conclude that the screening procedures are proper under Md. Rule 14–207.1.

### 1. The Circuit Court's *Sua Sponte* Post–Sale Review Is Permissible.

Appellants argue that the Circuit Court's post-sale review of the papers and pleadings in the foreclosure sale was inappropriate. In support of the proposition that the review must be conducted prior to a foreclosure sale, Appellants rely upon *Shepherd v. Burson,* 427 Md. 541, 50 A.3d 567 (2012), *Bates v. Cohn,* 417 Md. 309, 9 A.3d 846 (2010), and *Greenbriar Condominium Phase I Council of Unit Owners v. Brooks,* 387 Md. 683, 878 A.2d 528 (2005). As the Attorney General notes correctly, such reliance is misplaced. None of these cases imply any limitation on a court's authority to consider whether the papers and pleadings filed in a foreclosure action are sufficient legally. Rather, these cases provide guidance for what exceptions a homeowner/borrower must assert pre-sale and which may be asserted post-sale.[12]

---

12. *Greenbriar* and *Bates* addressed the narrow issue of a debtor's filing of certain kinds of exceptions after a foreclosure sale. In such cases, " 'the debtor's later filing of exceptions ... may challenge only procedural irregularities at the sale or ... the statement of indebtedness.' " *Bates,* 417 Md. at 327, 9 A.3d at 857 (quoting *Greenbriar,* 387 Md. at 688, 878 A.2d at 530). Specifically, we noted that *"[s]uch procedural allegations may charge that 'the advertisement of sale was insufficient* or misdescribed the property, the creditor committed a fraud by preventing someone from bidding or by chilling the bid, challenging the price as unconscionable, etc.' " *Id.* (emphasis added) (quoting *Greenbriar,* 387 Md. at 688, 878 A.2d at 530). In contrast, though, "a homeowner/borrower ordinarily must assert known and ripe defenses to the conduct of a foreclosure sale prior to the sale, rather than in post-sale exceptions." *Id.,* 417 Md. at 328, 9 A.3d at 858. To hold otherwise, the Court noted, would allow a borrower "to raise any sort of exception after the foreclosure sale" and "undoubtedly would be a chilling effect on interested prospective purchasers coming to sales." *Id.,* 417 Md. at 329–30, 9 A.3d at 859.

In *Shepherd,* we addressed the sufficiency of a Notice of Intent to Foreclose which failed to identify one of the secured parties as required

Rather, we find the plain language of Md. Rule 14–207.1(a) more persuasive on this point. The Rule's plain language expresses nothing that might limit the court's authority to review the pleadings and papers *sua sponte* after the foreclosure sale. Moreover, irregularities in the advertisement of sale are a type of irregularity that a borrower/homeowner may assert post-sale. *See Bates*, 417 Md. at 327, 9 A.3d at 857; *Greenbriar*, 387 Md. at 688, 878 A.2d at 530. Lastly, it would be impossible for the court to have reviewed the advertisement prior to the sale because the advertisement was not filed with the Circuit Court until the day of the sale. We find the Circuit Court's *sua sponte* post-sale review of the papers and pleadings filed in this foreclosure action a permissible exercise of its authority under Md. Rule 14–207.1.

## 2. Advertisement of Sale Constitutes a Paper.

Appellants assert also that the advertisement of sale does not constitute a "pleading[ ] or paper[ ]" and, thus, is not subject to review under Md. Rule 14–207.1. In response, the Attorney General argues that "[t]he advertisement of sale indisputably is filed in an action to foreclose a lien, and although it is not a pleading, it is certainly a 'paper' within the meaning of Rule 14–207.1(a)." (footnote omitted). The Attorney General asserts that "[a]lthough the term 'paper' is not defined in the Maryland Rules, its use in Rule 14–207.1(a) and

---

by the Maryland Rules, but which did identify a secured party and contained sufficient information to allow the homeowner/borrower to pursue a loan modification if she so desired. The Court found that "[a] foreclosing party should ordinarily identify, in the Notice of Intent to Foreclose, each entity that is a 'secured party' with respect to the deed of trust to be foreclosed. However, a failure to disclose every secured party is not always a basis for dismissal of a foreclosure action." *Shepherd*, 427 Md. at 560, 50 A.3d at 578. Despite advance notice of fourth months prior to the sale in that case, the homeowner did not move for a dismissal of the foreclosure action on the grounds of a defective notice for more than a year after the disclosure of the notice. In such circumstances, the Court concluded "the dismissal of the foreclosure action was not required." *Id.*

While these cases are instructive for exceptions by a homeowner/borrower, they are inapplicable in the context of a court reviewing papers and pleadings for legal sufficiency under Md. Rule 14–207.1(a).

elsewhere in the Rules shows that it is intended to encompass the broad universe of documents filed in litigation other than those that fall within the meaning of 'pleading.' "

This Court addressed recently the definition of "papers," as used in the Maryland Rules, in *Duckett v. Riley*, 428 Md. 471, 52 A.3d 84 (2012). In that case, we considered whether a completed civil case information report constituted a "paper" for purposes of noting a jury trial election under Md. Rule 2–325(a). We began our analysis by noting,

> The Maryland Rules do not define the word, "paper." Nevertheless, we can state with certainty that "paper" is not equivalent to, or encompassed in, "pleading", which is defined in Md. Rule 1–202(t). Referring to that definition, a "paper" is not "a complaint, a counterclaim, a cross-claim, a third-party complaint, an answer, an answer to a counterclaim, cross-claim, or third-party complaint, a reply to an answer, or a charging document as used in Title 4." Nor is a completed case information report form a "pleading." Moreover, Rule 2–325(a) refers to both "paper" and "pleading" as proper vehicles for a jury trial election. Were they synonymous, that would not have been necessary—the Rule likely would have provided that the jury trial election or demand could be made in a "separate pleading."

*Duckett*, 428 Md. at 478–79, 52 A.3d at 88.

We then confronted the "critical question . . . whether a case information report is, or can be, a 'paper.' " *Id.*, 428 Md. at 479, 52 A.3d at 88. This was not the common understanding of "paper" because the common practice provided that counsel should file a separate paper requesting a jury trial. *Id.*, 428 Md. at 479, 52 A.3d at 88–89. We concluded that, because another Maryland Rule, Rule 2–112(a), "refers to both 'paper' and 'information report', the term 'paper' does not embrace a case information report." *Id.*, 428 Md. at 479–80, 52 A.3d at 89.

The present case differs from *Duckett* in two significant respects. First, in contrast to the common practice for requesting a jury trial in a civil case, common practice in

foreclosure proceedings does not distinguish between the advertisement of sale and other papers filed in the action. Instead, the advertisement of sale serves as a critical component of the filings because it sets forth the terms of the sale. Second, no other rule refers discretely to both "paper" and "advertisement of sale" in any action, much less in a foreclosure action. As such, we find that, for purposes of Md. Rule 14–207.1(a), "paper" does encompass an advertisement of sale.

### 3. Rule 14–207.1 Requires Plaintiff to Demonstrate Compliance.

■ According to Appellants, the Circuit Court's Notice of Non–Compliance shifted the burden impermissibly to the Substitute Trustees and 101 Geneva to show why the sale should not be vacated. Appellants argue that the Circuit Court's actions "were tantamount to the Circuit Court taking 'exceptions' to a sale that had already occurred, pursuant to Md. Rule 14–305(d)(1)." In so characterizing the Circuit Court's actions, they err. The Circuit Court did not take "exceptions" to a sale pursuant to Md. Rule 14–305(d)(1),[13] but rather acted properly pursuant to Md. Rule 14–207.1.

As the Attorney General notes (again correctly), the plain language of Md. Rule 14–207.1 sets forth the procedure for when a circuit court "determines that the pleadings or papers filed do not comply with all statutory and Rule requirements." Md. Rule 14–207.1(a). Pursuant to Md. Rule 14–207.1, a circuit court may notify the parties of the non-compliance and may dismiss the action or take some other appropriate action "if the *plaintiff* does not demonstrate within 30 days that the papers are legally sufficient or that the deficiency has been cured." *Id.* (emphasis added). Thus, the Circuit Court recognized properly that Md. Rule 14–207.1 places the burden where it should be to prove compliance or cure the deficiency.

---

13. Md. Rule 14–305(d)(1), which governs the procedure when a party takes exceptions to the foreclosure sale, and the cases interpreting that Rule cited in Appellants' brief, are inapplicable here where no party took exception to the sale.

### 4. Rule 14–207.1 Procedures Do Not Infringe Upon the Substitute Trustees' Duties.

Lastly, in regards to the challenges to the Circuit Court's 14–207.1 procedures, 101 Geneva and the Substitute Trustees assert that the Circuit Court's screening procedures interfere with the Substitute Trustees' fiduciary duties. Trustees "have discretion to outline the manner and terms of sale," but that discretion is not unlimited. *Simard v. White,* 383 Md. 257, 312, 859 A.2d 168, 200 (2004) (quoting *White v. Simard,* 152 Md.App. 229, 241, 831 A.2d 517, 524 (2003), *aff'd Simard v. White,* 383 Md. 257, 859 A.2d 168 (2004)). In particular, this discretion is limited by the requirement that "[the trustees'] actions [must be] consistent with the deed of trust and the goal of securing the best obtainable price." *Id.* (quoting *White v. Simard,* 152 Md.App. at 241–42, 831 A.2d at 524–25). It is well-settled that the circuit courts may act pursuant to the Maryland rules and statutes to enforce this requirement. *See Maddox,* 424 Md. at 399–400, 36 A.3d at 438. Thus, we conclude the Circuit Court's screening of the advertisement of sale in this case does not infringe impermissibly upon the Substitute Trustees' fiduciary duties.

### B.

At last, we turn to the beating heart of the matter: whether *Maddox* controls this case.[14] In *Maddox,* we vacated

---

14. Appellants argue also that the Circuit Court erred in applying *Maddox* retrospectively. They misinterpret our case law on retrospective operation of judicial decisions, which differs from that of legislation. *See Fletcher v. Safe Deposit & Trust Co.,* 193 Md. 400, 410, 67 A.2d 386, 390 (1949) ("Rules of construction and constitutional limitations against retroactive legislation are not applicable to judicial decisions.") In regards to judicial decisions, retroactivity "is overwhelmingly the norm ... and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law." *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 535, 111 S.Ct. 2439, 2443, 115 L.Ed.2d 481 (1991) (citations omitted). *See also State v. Daughtry,* 419 Md. 35, 77, 18 A.3d 60, 85 (2011) (" '[I]n the overwhelming majority of cases, a judicial decision sets forth and applies the rule of law that existed both before and after the date of the decision ... [I]n the ordinary case, no issue of

the foreclosure sale of a residential property and ordered a resale because an impermissible additional fee upon a successful bidder to pay the trustees' attorneys' fees at settlement was included in the advertisement as a term of the foreclosure sale. *Maddox*, 424 Md. at 381, 36 A.3d at 427. The Court, in a narrow holding, stated that

> [I]n the absence of specific authority in the contract of indebtedness or contained in statute or court rule, it is an impermissible abuse of discretion for trustees or lenders who 'bid in' properties, to include the demand for the benefit of the Trustees in the advertisement of sale, or in any other way, in that it is contrary to the duty of trustees to maximize the proceeds of the sales and, moreover, is not

---

a 'prospective only' application arises.' ") (footnote omitted) (quoting *American Trucking Assn's, Inc. v. Goldstein*, 312 Md. 583, 591, 541 A.2d 955, 958–59 (1988)).

Ordinarily, a court reaches the merits of the question brought before it and applies its resolution to the parties, even though their dispute arose in the past. In other words, judicial decisions are usually retroactive, at least in the sense that they do not just apply to events in the future, but also to events in the past.

Linda Meyer, *"Nothing We Say Matters": Teague and New Rules*, 61 U. Chi. L.Rev. 423, 423 (1994).

The reason for this norm is that judicial decisions declare generally what the law is from the beginning. *See, e.g., Coastal Tank Lines v. Canoles*, 207 Md. 37, 50, 113 A.2d 82, 88 (1955), *overruled in part on other grounds by Deems v. W. Maryland Ry. Co.*, 247 Md. 95, 231 A.2d 514 (1967) ("Reversal by judicial decision declare[s] the law as it has been from the beginning.") (citations and internal quotation marks omitted). The limited exception to this general norm is where a decision overrules prior law and declares a new principle of law. *See Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 470–72, 601 A.2d 633, 658 (1992) (setting forth the governing principles to determine whether a new decision should be applied prospectively only).

*Maddox* did not declare a new principle of law. As the Attorney General noted in its brief (again correctly), "[i]ndeed, it is apparent that this Court, in directing that the order ratifying the sale in *Maddox* be vacated, did not believe it was applying new substantive law retroactively to overturn vested rights." Thus, because we applied the *Maddox* principles to the parties in *Maddox*, even though the event in dispute— the sale—occurred in the past, we find similarly that the Circuit Court did not err here in analyzing whether *Maddox* applies.

in conformance with state or local rules and as we have said, is against public policy.

*Id.,* 424 Md. at 399–400, 36 A.3d at 438.

We find the present case to be distinguishable easily from *Maddox.* *Maddox* is inapposite on the grounds of the narrow holding alone, namely, that, unlike the fee in *Maddox,* the fee in the present case is contemplated by a court rule. *See id.,* 424 Md. at 386, 399–400, 36 A.3d at 430, 438. Md. Rule 14–305(g) provides, "If the purchaser defaults, the court, on application and after notice to the purchaser, may order a resale *at the risk and expense of the purchaser or may take any other appropriate action.*" (emphasis added). This Rule acknowledges explicitly that a defaulting purchaser may be subject to additional expenses and other risks occasioned by his or her default, such as the imposition (or shifting) of the additional fee provided in the advertisement of sale.[15]

The distinction does not rest, however, on *Maddox's* narrow holding alone. An analysis of the reasoning in the majority opinion in *Maddox* distinguishes further it from the present case. The *Maddox* court found the following additional facts troubling in that case: first, the lender bought-in the subject residential property at the foreclosure sale; second, the fee was not subject to court review for reasonableness; and third, because the possible imposition of the advertised fee likely had a chilling effect on both potential bidders and the maximum sum to be obtained at the foreclosure sale, the inclusion of the additional fee as a term of sale was a violation of the trustee's fiduciary duties and of public policy. None of these factors exist in the present case.

---

**15.** The Attorney General noted at oral argument that it is impossible to know whether the Substitute Trustees intended for this fee to be part of those risks and expenses the defaulting purchaser is required to pay, pursuant to Rule 14–305(g), or if the fee imposed is in addition to the risks and expenses referred to in the Rule. In either case, we conclude that the fee fits within the realm of possible risks and expenses envisioned by Rule 14–305(g).

■ 101 Geneva was a third party purchaser. The lender in *Maddox* bought-in the property at the foreclosure sale. "When the purchaser at the foreclosure sale is the mortgagee or his assignee, the Courts will examine the sale closely to determine whether or not the sale was bona fide and proper. The Courts will set aside such a sale upon slight evidence of partiality, unfairness, or want of the strictest good faith." *Fagnani v. Fisher,* 418 Md. 371, 395, 15 A.3d 282, 296 (2011) (quoting *Southern Maryland Oil, Inc. v. Kaminetz,* 260 Md. 443, 450, 272 A.2d 641, 645 (1971)) (internal quotation marks omitted). The *Maddox* majority expressed similar concern that the lender bought-in the subject property. Specifically, the majority opinion noted that imposing the *Maddox* fee was "an attempt to reduce the lender's costs of foreclosure in deficiency situations by transferring some of the costs to prospective third-party bidders." *Maddox,* 424 Md. at 399, 36 A.3d at 438. The concerns of front-loading and shifting of the expenses of the secured party, with attendant exposure to the defaulting borrower, and the corresponding heightened scrutiny of a lender buy-in, however, are inapplicable where a third party purchaser bought the subject property. Therefore, all related concerns for lender-buy-in situations disappear and heightened scrutiny concerns are dispelled.

Second, although the *Maddox* fee was "relatively minor," the majority was uncomfortable with the boundless nature of the fee. Judge Cathell, writing for the majority, noted that "[the fee] is not subject to the audit process or direct court approval in the foreclosure process and the reasonableness of such fees depends only upon the judgment of the attorneys and the lenders attempting to impose them." *Maddox,* 424 Md. at 397–98, 36 A.3d at 437. Such concerns do not apply here. The fee here is subject to direct court approval in the foreclosure process, pursuant to Rule 14–305(g). "If the purchaser defaults, the court, on application and after notice to the purchaser, may order a resale at the risk and expense of the purchaser or may take any other appropriate action." Md. Rule 14–305(g). Presumably, if the reasonableness of the amount of the fee here was challenged by someone with

standing or by the court *sua sponte,* the court would review the reasonableness of the terms of the sale and could take appropriate action.[16]

Lastly, and most significantly, the majority in *Maddox* found that, because the imposition of the fee could divert money from the successful bid price of the sale of the subject property, the fee violated the trustee's fiduciary duties. In a foreclosure sale, the trustee has a duty "to protect the interest of all concerned persons to the foreclosure sale *and to use reasonable diligence in producing the largest revenue possible for the mortgaged property ...*" and "obligation to ensure that the sale was conducted *so as to maximize the price received for the property." Maddox,* 424 Md. at 395, 36 A.3d at 435 (quoting *Pizza v. Walter,* 345 Md. 664, 679, 681, 694 A.2d 93, 100, 101 (1997), *mandate withdrawn,* 346 Md. 315, 697 A.2d 82 (1997) (withdrawing by joint motion pursuant to settlement agreement)) (emphasis added in *Maddox* ) (citations and internal quotation marks omitted). In determining whether a trustee failed to meet his or her duties, " '[t]he test is: Was the property sold under such conditions and terms as to advertisement and otherwise, as a prudent and careful man would employ, seeking to obtain the best price for his own property.' " *Id.* (quoting *Waters, et al. v. Prettyman, Surviving Trustee,* 165 Md. 70, 74, 166 A. 431, 433 (1933)). *See also Ten Hills Co. v. Ten Hills Corp.,* 176 Md. 444, 454, 5 A.2d 830, 835 (1939) ("It is axiomatic that the trustee [is] bound to exercise the same degree of care, diligence and judgment in selling the property that a prudent man of ordinary business experience would exercise in selling own property to the best advantage.") (citations omitted).

In applying this test in *Maddox,* the majority found first that "[i]t is reasonable to presume that any purchaser willing to pay that added legal fee might also be willing to have added

---

**16.** The reasonableness of the exact amount, or the custom and usage of the amount, of the fee and the number of days for cure of a default, are not for our review here, but rather for a circuit court's review in the event of the successful bidder defaulting, which did not occur here.

to his bid, if necessary, the amount of that fee." *Maddox*, 424 Md. at 386, 36 A.3d at 430. The majority concluded then that, because "the imposition of the fee diverts a sum, however minimal it may be in some instances, from the sum that might be bid at the sale," it costs the mortgagor "the benefit of the extra sum . . . either as part of a surplus or as a reduction in the deficiency for which the mortgagor might be liable." *Maddox*, 424 Md. at 386, 36 A.3d at 430. Therefore,

> [The fee] is much different than a trustee advertising the manner and terms of sale which generally include the date, time, place, and manner of sale (public auction, written bids, etc), how to qualify as a bidder, i.e. deposit requirements, the way in which the purchaser will be required to pay the purchase price itself (so much on the date of sale, additional payments upon reaching certain stages in the foreclosure process), the pro-ration of taxes, title issues and the like.

*Id.*

In contrast, however, a "prudent and careful man" may be well-advised to utilize a conditional fee-shifting reimbursement, such as the one in this case, to discourage bidders from defaulting. Moreover, unlike the fee in *Maddox*, the fee here does not apply automatically in every case, but rather only if a successful bidder defaults. The Court of Special Appeals addressed a similar term of sale in *White v. Simard*, 152 Md.App. 229, 831 A.2d 517 (2003), *aff'd Simard v. White*, 383 Md. 257, 859 A.2d 168 (2004), when it analyzed the permissibility of a waiver of surplus clause in an advertisement of sale. Similar to the fee at issue here, the clause in *White v. Simard* would affect the purchaser only if the purchaser defaulted on his or her contract to purchase the property.[17] The intermedi-

---

17. The Attorney General asserts that reliance on the Court of Special Appeals's discussion in *White v. Simard*, regarding whether the term of sale might depress bids of potential purchasers, is misplaced. According to the Attorney General, "[t]he situation in this case—the unauthorized assignment of potential responsibility to pay attorneys' fees of the Substitute Trustees—is not analogous to *Simard*, which involved a term of sale that sought to eliminate the possibility that a defaulting purchaser might be able to reap substantial gains by defaulting." Although the

ate appellate court noted that, because of this condition, "bidders who bid with the good faith intention of fulfilling their bidding contracts stand to lose nothing from a waiver of surplus clause." *Id.*, 152 Md.App. at 251, 831 A.2d at 530. On the other hand, the conditional clause "provid[ed] reasonable and legitimate protection against purchasers who bid either with the intent of proceeding to settlement only if they can 'flip' the property first, or who bid without reasonable expectation that they have financial means to settle." *Id.* Because it provides a great benefit, the court concluded that the clause was not "patently offensive to the common good ... [n]or would the common sense of the entire community ... pronounce it invalid." *Id.* (citations and internal quotation marks omitted).

Moreover, the court found that, because the clause "only operates if the purchaser defaults after the sale is ratified," the clause did not have a chilling effect. *Id.*, 152 Md.App. at 252, 831 A.2d at 531. "[T]he only bidders that such a term would discourage are those who expect to default or want the option to default." *Id.* The court stated that it could not "see how discouraging bidders who never intended to complete settlement on their bids could be against public policy" because *"the exclusive purpose of a foreclosure sale is to timely and efficiently recoup the balance remaining on the mortgage account." Id.* (emphasis added).

Similarly, we do not see how this conditional fee would have an improper chilling effect on securing bidders at a maximum sale price. In fact, we note that the "reasonable and prudent man" should make every reasonable attempt to dissuade defaulting bidders who would delay unnecessarily the foreclosure proceedings.[18] Imposing a conditional fee, such as the one

---

terms of sale do differ, the reasoning certainly applies here regarding whether a term of sale that is imposed only if the purchaser defaults may have a chilling effect on potential bidders and the maximum sale price for the property.

**18.** The Attorney General suggests that the possibility of the conditional fee could chill some bidders from bidding as high. Such a possibility is

here, is arguably a useful tool for trustees "to timely and effectively recoup the balance remaining on the mortgage account," which is the exclusive purpose of a foreclosure sale. *Id.* Thus, shifting a fee in the event of default certainly is not an "injudicious and disadvantageous" method for selling the subject property, *Maddox,* 424 Md. at 396, 36 A.3d at 436 (quoting *Gould v. Chappell,* 42 Md. 466, 470 (1875)) (internal quotation marks omitted).

Because this fee does not raise the same concerns as the fee in *Maddox,* this case falls outside of *Maddox.* We find it far more similar to "the setting of the terms, manner and time of sale," rather than an "imposition of such additional fees" outside of the normal foreclosure procedures as was the case in *Maddox. Id.,* 424 Md. at 386, 36 A.3d at 430. We conclude, therefore, that *Maddox's* prohibition on unauthorized fees does not apply here; instead, this fee is permissible.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEED-INGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLANTS.**

BARBERA, C.J., McDONALD and WATTS, JJ., concur and dissent.

WATTS, J., concurring and dissenting, in which BARBERA, C.J., and McDONALD, J., join.

I respectfully concur, in part, and dissent, in part.

I agree that the hearing judge abused her discretion in failing to exercise her discretion as to whether to ratify the foreclosure sale.

I also agree that the screening procedures utilized by the circuit court pursuant to Maryland Rule 14–207.1(a) are proper, but I write separately to set forth my reasoning. Rule 14–

---

too remote and does not have so direct a connection as alarmed the Court in *Maddox.*

207.1(a) permits circuit courts to "adopt procedures to screen pleadings and papers filed in an action to foreclose a lien." If, as a result of the screening, the circuit court "determines that the pleadings or papers filed do not comply with all statutory and Rule requirements, it may give notice" that the action will be dismissed "or that some other appropriate order will be entered by reason of the non-compliance if the plaintiff does not demonstrate within 30 days that the papers are legally sufficient or that the deficiency has been cured." Md. R. 14–207.1(a).

Rule 14–207.1(a) broadly permits circuit courts to conduct screenings of pleadings and papers in foreclosure actions, even if no objection or exception has been filed, and to take action in accordance with the Rule thereafter if non-compliant pleadings or papers are found. Of significance, the Rule does not confine a circuit court's screening to only those pleadings and papers filed prior to a foreclosure sale, but rather applies to all of the pleadings and papers filed in "an action to foreclose a lien." In contrast, prior to the adoption of Rule 14–207.1 in 2010, Maryland Rule 14–207(c) provided for screening of "orders to docket and complaints to foreclose a lien." Md. R. 14–207(c) (2009). By its very language, Rule 14–207(c) limited the screening of pleadings and papers in a foreclosure action to those pleadings and papers filed pre-sale, specifically, those pleadings and papers contained within the order to docket or complaint to foreclose. Conspicuously, Rule 14–207.1(a) does not contain such a limitation. Indeed, in proposing the new screening procedures in Rule 14–207.1(a), the Rules Committee signaled an intent to broaden the scope of a circuit court's ability and authority to conduct screenings, with particular focus to be paid to the affidavits and certificates filed in a foreclosure action. Nothing in the placement of Rule 14–207.1 within Chapter 200, Foreclosure of Lien Instruments, indicates an intent to limit the Rule strictly to pre-sale screenings.[1] Thus, a circuit court may utilize Rule 14–207.1(a) to

---

1. The Rules contained within Chapter 200 of Title 14 of the Maryland Rules pertain to a variety of matters, from institution of a foreclosure

**260**

screen pleadings and papers filed in a foreclosure action, whenever those pleadings and papers may be filed.

I am not persuaded by the argument that an advertisement of sale does not constitute a pleading or paper filed in a foreclosure action subject to review under Rule 14–207.1(a). The advertisement of sale was, undisputedly, filed by the Substitute Trustees with the circuit court on the day of the sale, October 17, 2011. The advertisement of sale is not a "pleading." [2] Nonetheless, the advertisement of sale is certainly a "paper" within the meaning of Rule 14–207.1(a). Although the term "paper" is not defined within the Maryland Rules, Black's Law Dictionary defines "paper" broadly as "[a]ny written or printed document or instrument[.]" Black's Law Dictionary 1142 (8th ed.2004). There is no colorable argument that an advertisement of sale, a printed document filed with the circuit court in a foreclosure proceeding, is anything other than a "paper" within the meaning of Rule 14–207.1(a). As such, circuit courts, as part and parcel of their screening authority, may, pursuant to Rule 14–207.1(a), review advertisements of sale.

As to Maryland Rule 14–305, concerning post-sale procedures and ratification, I am not convinced that the Rule precludes a circuit court from conducting a screening of the pleadings and papers filed post-sale pursuant to Rule 14–207.1(a).[3] Although 101 Geneva, LLC and the Substitute

---

action, to stay of a sale and dismissal of an action, to the sale itself and the proceeds of the sale.

**2.** "Pleading" is defined in Maryland Rule 1–202(u) as "a complaint, a counterclaim, a cross-claim, a third-party complaint, an answer, an answer to a counterclaim, cross-claim, or third-party complaint, a reply to an answer, or a charging document as used in Title 4." Maryland Rule 14–207(a), concerning pleadings allowed in foreclosure cases, lists a power of sale, an assent to a decree, and a lien instrument as additional pleadings for purposes of foreclosure cases.

**3.** In comparing the two Rules, Rule 14–207.1 applies and pertains to actions taken by a circuit court, and specifically those actions related to a circuit court's screening of a foreclosure action, whereas Rule 14–305

Trustees are correct that Rule 14–305 does not require that a circuit court conduct a post-sale screening in order to ratify a sale, the Rule states that the circuit court shall ratify the sale only if, among other things, the court is "satisfied that the sale was fairly and properly made." I discern no reason why, in determining and satisfying itself that a sale was fairly and properly made, a circuit court may not avail itself of the screening procedure specifically provided for in Rule 14–207.1(a) to review the pleadings and papers filed post-sale. Even absent such a screening procedure provided pursuant to Rule 14–207.1(a), a circuit court, of necessity, must review the pleadings and papers filed post-sale to ensure to its satisfaction that the "sale was fairly and properly made" prior to ratifying the sale pursuant to Rule 14–305(e). As such, I am satisfied that a circuit court may conduct a screening, or review, of the pleadings and papers filed in a foreclosure action post-sale pursuant to Rule 14–207.1(a), Rule 14–305(e), or both.

I now part company with the majority. I respectfully disagree with upholding the $750 attorneys' fee and determining that the fee is permissible under the circumstances presented in this case. Although I agree that the permissibility of $750 attorneys' fee at issue in the instant case is not directly controlled by this Court's holding in *Maddox v. Cohn*, 424 Md. 379, 36 A.3d 426 (2012), I would have affirmed the circuit court's judgment because the $750 attorneys' fee and ten-day default period are inconsistent with the circuit court's discretion under Rule 14–305(g), and because of the lack of information in the record about the origin and reasonableness of the $750 attorneys' fee and the ten-day default period contained within the advertisement of sale. I address the points in reverse order.

First, nothing in the record explains how the terms of the advertisement of sale came to be; *i.e.*, the record is silent as to how the Substitute Trustees selected the $750 attorneys'

placcs duties upon the person authorized to make the salc, the purchaser, the clerk, and the circuit court, to occur after a foreclosure sale.

fee or ten-day default period. At oral argument, this Court inquired specifically into the origins of the $750 attorneys' fee and ten-day default period. Counsel for the Substitute Trustees stated that he believed the ten-day default period was an "arbitrary" time limit developed through practice over time, but that the ten-day default period typically was not enforced because trustees desire that sales go to settlement. Similarly, counsel for 101 Geneva, LLC responded that the ten-day default period arose from custom and practice based upon the operation of Maryland Rule 2–534 as to when an action became final.[4] Counsel for 101 Geneva, LLC further stated that the $750 figure included in the advertisement of sale had "developed over time" from the expenses estimated to be incurred in preparing and filing a petition for resale, serving the show cause order, and obtaining the resale order. When asked by Judge McDonald whether the record contained information about the establishment of the $750 fee, counsel for 101 Geneva, LLC admitted that the record did not contain such information, and that he "candidly" did not believe that all trustees within the State of Maryland utilized the $750 figure. Thus, although counsel for both the Substitute Trustees and 101 Geneva, LLC had some explanation at oral argument concerning the origins of the $750 fee and ten-day default period, neither was able to identify any information in the record establishing either the fee or time limit as reasonable. Although the holding is not directly applicable, one of the concerns expressed in the underpinnings of *Maddox,* 424

---

4. Maryland Rule 2–534, concerning motions to alter or amend a judgment, provides:

> In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. A motion to alter or amend a judgment may be joined with a motion for new trial. A motion to alter or amend a judgment filed after the announcement or signing by the trial court of a judgment but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

Md. at 397–98, 36 A.3d at 437, was that the fee was "not subject to the audit process or direct court approval in the foreclosure process and the reasonableness of such fees depend[ed] only upon the judgment of the attorneys and the lenders attempting to impose them."

Second, but equally important, in my view, the terms of the advertisement of sale—namely, the $750 attorneys' fee and ten-day default period—usurp the circuit court's discretion under Maryland Rule 14–305(g). Rule 14–305(g) provides: "If the purchaser defaults, the court, on application and after notice to the purchaser, may order a resale at the risk and expense of the purchaser or may take any other appropriate action." Here, the terms of the advertisement of sale, by already obligating a defaulting purchaser to pay attorneys' fees "plus all costs incurred," circumvent the circuit court's authority to order resale under Rule 14–305(g) and to determine the expenses to be incurred by the defaulting purchaser. Counsel for the Substitute Trustees admitted that the advertisement of sale does not even specifically require that the appropriate motion for resale be made pursuant to Rule 14–305(g), and that third-party purchasers may not be familiar with post-sale procedures in a foreclosure action.

Significantly, under the plain language of the advertisement of sale, a defaulting purchaser incurs the $750 attorneys' fee so long as the trustees have filed the appropriate motion to resell in the circuit court; *i.e.,* the payment of the $750 attorneys' fee by the defaulting purchaser is not conditioned upon the circuit court's grant of the motion to resell or the circuit court's issuance of an order for resale. Moreover, the advertisement of sale calls for the defaulting purchaser to pay for "all costs incurred" in addition to the $750 attorneys' fee, but the phrase "all costs incurred" is ambiguous at best. The phrase does not indicate whether "all costs incurred" include all costs incurred with the original sale upon which the purchaser defaulted, or all costs incurred with the resale, or both. In sum, although there may be circumstances where an advertisement of sale contains terms consistent with Rule 14–305(g), neither the plain language of the advertisement at issue nor

the statements made at oral argument concerning the terms of the advertisement convince me that the terms of this advertisement of sale are permissible or consistent with Rule 14–305(g) and the circuit court's authority under that Rule to order resale.[5]

As a final matter, I believe that the rationale of the Court of Special Appeals in *White v. Simard,* 152 Md.App. 229, 831 A.2d 517 (2003), *aff'd,* 383 Md. 257, 859 A.2d 168 (2004), concerning the chilling effect of attorneys' fees on bidding, is applicable. In *White,* 152 Md.App. at 252, 831 A.2d at 530, the Court of Special Appeals stated that a trustee's duty in a foreclosure sale is "to ensure that the sale is made under circumstances 'fairly calculated to bring the best obtainable price[,]' " and to refrain from any action "that would have a chilling effect on the bidding." (Citation omitted). *See also Maddox,* 424 Md. at 397, 36 A.3d at 436–37 ("The attempt . . . to impose an additional legal fee by a unilateral imposition in an advertisement of sale . . . [has the] actual effect [of] the opposite of maximizing the sums bid at the sale."). The $750 attorneys' fee in this case would have a chilling effect on a segment of the mortgage foreclosure purchasing market; specifically, on small or single-property purchasers/homebuyers—those who use the foreclosure market as an opportunity to purchase a first home at a discounted price. In such cases, if presented with the opportunity to bid on a property where the advertisement of sale contains the $750 attorneys' fee versus a property where the advertisement of sale does not contain such a fee in the event of default, I have no doubt that many potential small or single-home purchasers would bid on the latter property rather than risk incurring $750 in attorneys'

---

**5.** It is a bit of a leap for this Court to relate the $750 attorneys' fee to the anticipated expense of a resale allowed by Rule 14–305(g), especially as the advertisement itself is not clear as to whether the fee is in addition to the expense of resale and is subject to the order of the court.

It is notable that although raised at oral argument neither the Substitute Trustees nor 101 Geneva, LLC argued on brief that the advertised fee was justified by Rule 14–305(g). And, of course, the *amicus curiae* that we invited to participate did not brief an argument that was not made.

fee and "all costs" in the event of default. As such, in my view, inclusion of the mandatory $750 attorneys' fee and the costs provision would have a chilling effect on bidding by small or single-property purchasers and runs afoul of a trustee's duty to maximize bidding at foreclosure sales.

For all of the reasons above, I respectfully concur, in part, and dissent, in part.

Chief Judge BARBERA and Judge McDONALD have authorized me to state that they join in this opinion.